TOWN OF MANSFIELD *vs.* GAF CORPORATION & another.[1]

Bristol.   June 14, 1977. — July 27, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Practice, Civil,* Summary judgment. *Limitations, Statute of. Sale, Warranty. Uniform Commercial Code,* Warranty, Privity of contract.

Causes of action in tort for negligence or deceit in connection with the manufacture and installation of a defective roof on a school building accrued either at the time the negligent act occurred or when the defective condition was discovered, and not at the time the plaintiff discovered the roof had failed and could not be satisfactorily repaired.  [553-555]

The privity requirement of G. L. c. 106, § 2-318, inserted by St. 1957, c. 765, § 1, was applicable to an action for breach of warranty in connection with a defective roof installed on a school building where the sales of the roofing materials were made prior to St. 1971, c. 670, §§ 1 and 2, and the injury resulting from the defect occurred prior to the effective date of St. 1973, c. 750.  [555-556]

TORT AND CONTRACT.   Writ in the Superior Court dated February 27, 1974.

The action was heard by *Rutledge,* J., on motions for summary judgment.

*Lawrence B. Wernick (Robert F. McLaughlin* with him) for GAF Corporation & another.

*James T. Grady,* Town Counsel, for the town of Mansfield.

*Robert J. Sherer,* for Westcott Construction Corporation, submitted a brief.

BROWN, J.   The defendants bring this appeal from the denial by a Superior Court judge of the defendants' motions for summary judgment in the plaintiff's action seeking damages for breach of warranty, negligence and deceit

[1] Apache Foam Products.

in connection with roofing materials manufactured by the defendants and installed at the Mansfield high school. A single justice of this court allowed interlocutory appellate review. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.* 367 Mass. 464, 470 (1975). Compare *Corbett* v. *Kargman,* 369 Mass. 971 (1976).

The plaintiff commenced this action by writ dated February 27, 1974, alleging against the defendants in counts 1 and 4 a breach of warranty, in counts 2 and 5 negligent design and testing of the roofing materials, and in counts 3 and 6 deceit. In their answers, the defendants asserted the defenses of the statute of limitations and collateral estoppel as to all counts, and the defense of privity on the warranty counts.[2] Subsequently, the defendant Apache Foam Products (Apache) impleaded the general contractor, the roofing subcontractor, the architect and the roofing specifications consultant for the Mansfield high school project, none of whom are before us on appeal.

On October 28, 1975, and December 11, 1975, Apache and GAF Corporation, respectively, filed motions for summary judgment. On March 26, 1976, the Superior Court judge denied the motions.

We summarize the evidence as it appears in the affidavits and answers to interrogatories of the plaintiff and of the defendant Apache.[3] On March 11, 1968, the plaintiff entered into a contract with Westcott Construction Corporation (Westcott), the general contractor, for the construction of the Mansfield high school. Westcott designated the Burgess and Blacher Company (Burgess) as the roofing

---

[2] The defendants asserted numerous other defenses in their answers which they do not raise on appeal.

[3] We do not consider the factual allegations contained in the plaintiff's "Response and Opposition to [the defendants'] Motion for Summary Judgment," prepared by the plaintiff's counsel, as these allegations have not been sworn to and do not indicate that they were made on personal knowledge. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). *Shapiro Equip. Corp.* v. *Morris & Son Constr. Corp.* 369 Mass. 968 (1976). *Trustees of Tufts College* v. *Parlane Sportswear Co. Inc.* 4 Mass. App. Ct. 783 (1976). *Stanton Indus., Inc.* v. *Columbus Mills, Inc.* 4 Mass. App. Ct. 793 (1976).

subcontractors for the project. The roofing materials were supplied to Burgess by the defendants. There was no contract of sale between either defendant and the plaintiff. The sale of the roofing material from Burgess to the plaintiff was completed when construction of the roof was finished during October, 1969. Problems with leakage in the roof were discovered shortly after installation of the roof, and such leakage was promptly reported to Westcott and to Burgess. In approximately November or December of 1969, Lyman C. Avery, who was superintendent of the schools in Mansfield, accompanied by Arthur Faria, who was supervisor of grounds and maintenance for the school department of the town of Mansfield, inspected the roof and observed small blisters or bubbles appearing on it and two long cracks in the roof. Avery reported these observations to the architect. On February 22, 1971, David Malinski, a salesman for GAF Corporation, accompanied by Faria, toured the entire roofing area. Malinski "noted several areas where there was leaking and splitting of roofing felts." In addition, Malinski stated that Faria pointed out to him "areas of the roof which were split, blistered and leaking."

On February 6, 1973, the plaintiff filed a demand for arbitration against Westcott alleging "[f]ailure to construct [the] Mansfield high school roof of good quality material, free from fault and defect and in accordance with contract documents and specifications." The plaintiff sought damages which would be sufficient to enable it to replace the entire roof, plus attorney's fees and other costs and damages incurred as a result of the alleged contract breach. Westcott then demanded arbitration against Burgess, indicating that the dispute involved the same issues raised by the plaintiff in its demand for arbitration against Westcott. The board of arbitrators denied the claims of the plaintiff and of Westcott, and on December 11, 1974, a judge of the Superior Court confirmed the arbitration award.

1. The plaintiff argues on appeal that his causes of action in tort for negligence or deceit should not have accrued until it discovered or reasonably should have discovered that the roof had failed. Traditionally, absent an allegation

of fraudulent concealment of a plaintiff's cause of action (see *Friedman* v. *Jablonski*, 371 Mass. 482, 485, n.3 [1976]), negligence actions have been held to accrue when the negligent act occurred (*Pasquale* v. *Chandler*, 350 Mass. 450, 455-458 [1966]), and deceit actions have been held to accrue at the time the alleged misrepresentation was made. *Connelly* v. *Bartlett*, 286 Mass. 311, 317 (1934).

In *Hendrickson* v. *Sears*, 365 Mass. 83 (1974), the Supreme Judicial Court held that a cause of action against an attorney for negligently certifying title to real estate did not accrue under the statute of limitations, G. L. c. 260, § 2A, until the misrepresentation was discovered or should reasonably have been discovered. In *Friedman* v. *Jablonski, supra* at 484-485, the Supreme Judicial Court extended the so called discovery rule to a cause of action for deceit in the sale of residential real estate. Other jurisdictions have refused to extend the discovery rule to additional tort actions including actions against contractors for the negligent construction of commercial buildings. See cases cited in *Gates Rubber Co.* v. *USM Corp.* 508 F. 2d 603, 610, n.16 (7th Cir. 1975). But see *Med-Mar, Inc.* v. *Dilworth*, 214 Pa. Super. 402, 406-412 (1969) (discovery rule applied in action against architect for negligent construction of a medical building).

Even assuming arguendo that this is an appropriate case for use of the discovery rule, the plaintiff's action was not brought within two years of the date the defect was discovered, as required by G. L. c. 260, § 2A.[4] According to the plaintiff's own answers to interrogatories, the plaintiff discovered problems with leakage in the roof shortly after its installation in October, 1969. The plaintiff also stated in an answer to an interrogatory that it discovered blisters in the roof and observed cracks in the roof as early as November or December of 1969. The cause of action accrued at this time. We note that even if we were to use February 22,

---

[4] Effective January 1, 1974, the statute of limitations was changed to three years for tort actions "arising" on and after that date. G. L. c. 260, § 2A, as amended by St. 1973, c. 777, §§ 1, 4.

1971 (the date that the maintenance supervisor for the high school pointed out certain defects in the roof to the GAF salesman), as the date the cause of action accrued, the plaintiff's writ of February 27, 1974, was still brought more than two years after the cause of action accrued. There is thus no genuine material issue of fact involved in the plaintiff's tort counts which would warrant denial of the defendants' summary judgment motions. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 722 (1976). See *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-556 (1976).

The plaintiff's contention that the date of discovery is not the date the defect was or should reasonably have been discovered, but the date it discovered the roof had failed and could not be satisfactorily repaired is incorrect. The discovery rule is designed to postpone the accrual date of causes of action when the defect is "inherently unknowable." *Hendrickson* v. *Sears,* 365 Mass. at 90. In this case there is no dispute that the plaintiff learned that the roof was defective no later than November or December of 1969. The fact that it did not appreciate the extent of the damage until later is immaterial. *White's Farm Dairy, Inc.* v. *DeLaval Separator Co.* 433 F. 2d 63, 67 (1st Cir. 1970).

2. The defendants are correct in their assertion that summary judgment should have been granted to them with respect to counts 1 and 4 of the plaintiff's complaint charging them with breach of warranty because there had been no privity between the plaintiff and the defendants. The plaintiff had no contact with Apache or GAF Corporation; the sales of the roofing material were made from the defendants to Burgess which in turn sold the materials to the plaintiff. General Laws c. 106, § 2-318, inserted by St. 1957, c. 765, § 1, required privity of contract in order to charge a seller with breach of warranty. *Haley* v. *Allied Chem. Corp.* 353 Mass. 325, 331 (1967). *Necktas* v. *General Motors Corp.* 357 Mass. 546, 549 (1970). Although G. L. c. 106, § 2-318, was amended by St. 1971, c. 670, §§ 1 and 2, to eliminate the privity requirement for sales taking place after November 16, 1971 (the effective date of the Act), the

sale in the instant case occurred in 1969.[5] Finally, as the injury occurred prior to the effective date of the 1973 amendment to G. L. c. 106, § 2-318 (St. 1973, c. 750), that version of the statute also has no application to the facts of the instant case. Compare *Hoffman* v. *Howmedica, Inc.* 373 Mass. 32, 34-35 (1977).[6] Therefore, the Superior Court judge should have granted the defendants' summary judgment motions on counts 1 and 4.

Because of our disposition of these issues, we need not reach the defendants' other arguments raising the statute of limitations and asserting that the arbitrators' decision, confirmed by a Superior Court judge, collaterally estopped the plaintiff from bringing any of the counts in this action.

The orders of the Superior Court judge denying summary judgment for the defendants are reversed. Judgment is to enter for the respective defendants on all counts of the complaint.

*So ordered.*

---

[5] The plaintiff correctly points out in its brief that when there is a warranty that explicitly extends to the future performance of goods, a cause of action for breach of warranty does not accrue until the date when the breach is or should have been discovered. G. L. c. 106, § 2-725(2), inserted by St. 1957, c. 765, § 1. However, contrary to the plaintiff's contention, the date when a breach is or should have been discovered under G. L. c. 106, § 2-725(2), has no bearing on the date when the sale took place under the 1971 amendment to G. L. c. 106, § 2-318 (St. 1971, c. 670, § 2). In the statement of facts in its brief, the plaintiff even concedes that the sale "took place from December 1968 to and including October 1969. . .."

[6] General Laws c. 106, § 2-318, was later amended by St. 1974, c. 153.