TANYA GORE & others[1] *vs.* DANIEL O'CONNELL'S SONS, INC.

Hampden.    December 13, 1983. — March 20, 1984.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Limitations, Statute of. Parent and Child,* Companionship and society. *Negligence,* Emotional distress. *Emotional Distress,* Physical injuries to another.

Where the nature of a construction worker's depression and organic brain syndrome, resulting from a blow to the head in an industrial accident, was evident to lay observers and was medically diagnosed shortly after the accident, there was no tolling of the statute of limitations by reason of the fact that the full extent of the worker's injuries may not have been known until the completion of neurological and psychological studies nearly three years later.  [647-649]

Where a wife's tort claims arising from an industrial accident to her husband were barred by the statute of limitations at the time of the Supreme Judicial Court's decision in *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 509-517 (1981), the claims of the couple's children for loss of parental society were also barred.  [649-650]

No cause of action was stated by claims for emotional distress resulting from the plaintiffs' alleged discovery of the extent of their husband and father's injuries nearly three years earlier in an industrial accident. [650]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1981.

The case was heard by *Urbano,* J., on a motion to dismiss.

*Bernard Glazier* for the plaintiffs.

*L. Jeffrey Meehan* for the defendant.

KASS, J.  More than four and a half years had elapsed before the plaintiffs brought a tort claim founded on an industrial accident in which Gerald Gore (Gore) was injured.  Gore is the

---

[1] Robin Gore and Germone Gore, a sister and brother of Tanya Gore. All three were minors when the action was filed on their behalf by their mother Judith A. Gore.  Judith A. Gore is a plaintiff in her own right as well.

husband of Judith and the father of Tanya, Robin, and Gerome. The principal question in the case is whether the nature of Gore's injury was inherently unknowable, and the operation of the three-year statute of limitations[2] suspended, until a diagnosis of depression and organic brain syndrome was made on June 19, 1979. A judge of the Superior Court determined that, upon the facts as presented by affidavits and a stipulation, the statute of limitations had not been tolled. He allowed the defendant's motion for summary judgment and entered judgments accordingly. Judgments for the defendant were entered, as will appear, on different grounds as to claims brought by the minor plaintiffs.

The facts were as follows. On August 16, 1976, Gore, while working as a mason on a construction job, was hit in the head by a 4″ x 4″ x 8′ timber. Although he was wearing a hard hat, the blow must have been considerable because Gore was told at the Holyoke Hospital, to which he had been taken for examination, that "he had apparently received a bad concussion." (The quoted phrase is from a report by the psychiatrist who examined Gore on May 31, 1979, and who made the diagnosis on which the plaintiffs rest their action.) Gore displayed no outward physical manifestations of injury, but twenty-four hours after the accident he felt helpless and listless. From that time on Gore was depressed. He consulted a series of physicians. Dr. Smith, the physician who originally examined Gore at the hospital, sent Gore for a neurological work-up which turned up no neurological symptoms. A Dr. Reiss was similarly unable to find a neurological basis for Gore's difficulties. There followed a trip to the Lahey Clinic. Doctors there, following a medical and psychiatric work-up, diagnosed Gore's difficulty as anxiety with depression. Psychotherapy with a Dr. Williams followed. He wrote on February 28, 1978, that it was his "impression that the symptoms are related to [Gore's] accident."[3]

---

[2] G. L. c. 260, § 2A, as amended by St. 1973, c. 777, § 1.

[3] The plaintiffs' action was filed April 30, 1981, and, therefore, not within three years of this relatively specific diagnosis. The Lahey Clinic had earlier — in August, 1977 — diagnosed Gore's condition as anxiety with depression.

Dr. Williams posited "residual symptomatology from the blow to the head" and "a compensation neurosis" arising from the accident. On June 6, 1978, Gore underwent a battery of tests at the Neuro-Psychological Testing Laboratory at the Baystate Medical Center. An examining psychologist, Dr. Klepper, gave his diagnostic impression that: "Gerald Gore appears to have a chronic, mild, organic syndrome, associated with brain trauma, affecting the frontal and temporal lobes."

Still another psychiatric examination of Gore was conducted May 31, 1979, by Dr. Borenstein, who made a written report and diagnosis on June 19, 1979. Dr. Borenstein addressed his report to the plaintiffs' lawyer, and we may safely infer that it was prepared in anticipation of litigation. The Borenstein diagnosis is the one which the plaintiffs say informed them for the first time of the nature of Gore's medical condition.

1. *The running of the statute of limitations.* To the usual rule that a personal injury action accrues at the time the plaintiff is injured, *Dinsky* v. *Framingham,* 386 Mass. 801, 803 (1982), there is the familiar exception that, if the action is based on an inherently unknowable wrong, it accrues when the injured party knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action. See, e.g., *Hendrickson* v. *Sears,* 365 Mass. 83, 88-91 (1974); *Friedman* v. *Jablonski,* 371 Mass. 482, 486-487 (1976); *Franklin* v. *Albert,* 381 Mass. 611, 618-619 (1980); *Dinsky* v. *Framingham,* 386 Mass. at 803; *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. 99, 106 (1980). The unknown factor, however, must be what the facts are, not the legal theory for the cause of action. See *Zampell* v. *Consolidated Freightways Corp.,* 15 Mass. App. Ct. 954 (1983), and cases cited.

In the case of disease, it is possible that the disease lies latent and undiscoverable when the fact of some injury from a tort is first known. Asbestos-related disease is an example. So in *Fearson* v. *Johns-Manville Sales Corp.,* 525 F. Supp. 671, 673 (D. D.C. 1981), the plaintiff was informed in 1973 that he had mild asbestosis. Not until 1979 was he found to have bronchogenic carcinoma (lung cancer), from which he died two months later. The court determined that cancer and asbestosis

are distinct diseases. *Id*. at 674. Similarly, in *Wilson* v. *Johns-Manville Sales Corp.*, 684 F.2d 111 (D.C. Cir. 1982), a routine examination in 1973 disclosed that the plaintiff suffered from mild asbestosis. In 1978 he was diagnosed as having meso-thelioma, a cancer. Both courts observed that had the plaintiff in each case brought an action within the period of the statute of limitations, during which the cancer had not manifested itself, a claim that he might later be afflicted with cancer would have been speculative. *Fearson* v. *Johns-Manville Sales Corp.*, *supra*, at 674. *Wilson* v. *Johns-Manville Sales Corp.*, *supra*, at 119-120. Not only does it offend fairness to require of claim-ants the gift of prophecy, cf. *Franklin* v. *Albert*, 381 Mass. at 618, but it is unsound judicial policy to encourage the initiation of law suits in anticipation that a grave disease will manifest it-self pendente lite. See also *Young* v. *Clinchfield R.R. Co.*, 288 F.2d 499, 502 (4th Cir. 1961).

Here, however, no distinct disease has turned up. Almost immediately after Gore was hit on the head he became depres-sive and anxious. He lost no significant time in consulting medical help and more than one physician identified Gore's condition and linked it to his head injury of 1976. Gore did not work and was listless at home. His wife, therefore, cannot claim that state of ''blameless ignorance'' which tolls the stat-ute of limitations. See *Urie* v. *Thompson*, 337 U.S. 163, 170 (1949). No new disease has manifested itself in this case which is different from the original syndrome. Dr. Borenstein's re-port perhaps describes Gore's condition in sharper terms, but the diagnosis of depression arising from brain trauma had been advanced before. Although the parties have stipulated that it was not until June 19, 1979, the date of Dr. Borenstein's report, that the plaintiff Judith A. Gore ''first learned or could have reasonably learned that the psychiatric trauma suffered by . . . Gore was related to the original injury of August 16, 1976,'' it tests credulity that Mrs. Gore, even if she did not think about her husband's condition as one with the label ''psychiatric trauma,'' was unaware of his listless, anxious, and depressed condition. If, indeed, she was ignorant of the multiple inter-vening medical examinations and reports, it is an ignorance

which ought hardly to be characterized as blameless. The occasion for tolling the statute is not simply that an injury was unknown, but that it was "inherently unknowable even in retrospect." *Urie* v. *Thompson,* 337 U.S. at 169. We are disinclined to read the stipulation as meaning that Gore's injury was inherently unknowable. To the extent the parties intended to ascribe that meaning to their stipulation, we vacate it as improvident and not conducive to justice. *Loring* v. *Mercier,* 318 Mass. 599, 601 (1945). *Kalika* v. *Munro,* 323 Mass. 542 (1948). *Fall River Trust Co.* v. *B. G. Browdy, Inc.,* 346 Mass. 614, 617 (1964). Cf. *Pereira* v. *New England LNG Co.,* 364 Mass. 109, 114-115 (1973); *Treasurer of Essex County* v. *County Commrs. of Essex,* 7 Mass. App. Ct. 890, 891 (1974).

When an injury or disease resulting from injury becomes manifest, the statute of limitations does not stay in suspense until the full extent, gravity, or permanence of that same injury or consequential disease is known. So in *Olsen* v. *Bell Tel. Laboratories, Inc.,* 388 Mass. 171, 175 (1983), the statute was tolled until the plaintiff learned he had contracted asthma as a result of the conduct of the defendants, but the statute did not thereafter continue to stay in suspense until he knew the asthma was permanent. Cf. *Mansfield* v. *GAF Corp.,* 5 Mass. App. Ct. 551, 555 (1977) (date of discovery of roof defect was when roof failed, not when — later — the plaintiff appreciated the extent of the damage). See also *Ashley* v. *United States,* 413 F.2d 490, 493 (9th Cir. 1969) (action cannot be postponed until the precise extent of damage resulting from the tort is known). Contrast *Portis* v. *United States,* 483 F.2d 670 (4th Cir. 1973), and *Raymond* v. *Eli Lilly & Co.,* 117 N.H. 164, 167-176 (1977), in which the nature of the injury was early known but the cause of injury, drug toxicity, was not understood until much later, and the later time was taken as the start of the limitations period.

2. *The claims of the children.* At the time of Gore's injury his children were minors,[4] and ordinarily the statute of limita-

---

[4] Indeed, at the time of Dr. Borenstein's report on June 19, 1979, the children were age thirteen, ten, and seven.

tions on the claim of each for loss of parental society and emotional distress would not begin to run until each reached the age of majority. G. L. c. 260, § 7.

The possibility of an independent claim for loss of parental society by reason of injuries to a parent was announced in *Ferriter* v. *Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 509-517 (1980). It was declared in that opinion that, in a case in which a spouse's claim for loss of consortium was barred by the running of a limitations period before the opinion was issued (September 9, 1980), no child's action for loss of parental society arising from the same incident and instituted after the date of the *Ferriter* opinion would be entertained. *Id.* at 516 n.12. Here, Mrs. Gore's action was time barred prior to September 9, 1980; the children's action arises from the same incident; and the children's action was not instituted until April 30, 1981, some eight months after the *Ferriter* decision.

As to the claims based on emotional distress, assuming, without so deciding, that the plaintiffs' complaint alleges a substantial consequential physical injury within the meaning of *Dziokonski* v. *Babineau,* 375 Mass. 555 (1978), the claims fail because they are tied by the amended complaint to the date of claimed awareness of Gore's condition, i.e., almost three years after the accident. That hardly qualifies as an emotional trauma at the scene of the accident or closely on the heels of the accident. See *Dziokonski* v. *Babineau, supra,* at 568; *Ferriter* v. *Daniel O'Connell's Sons, Inc.,* 381 Mass. at 507; *Cohen* v. *McDonnell Douglas Corp.,* 389 Mass. 327, 341-342 (1983). Indeed, the absence of any hospital visit by the family (Gore drove himself home) and visible injury to Gore at the time of the accident negates a claim for the physical consequences of emotional distress of the sort considered in *Dziokonski* and *Ferriter.* Parenthetically, Mrs. Gore's claim for the consequence of emotional distress has the same failing as that of her children.

*Judgments affirmed.*