BEACONSFIELD TOWNHOUSE CONDOMINIUM TRUST[1] *vs.* DAVID
ZUSSMAN & others.[2]

No. 97-P-1052.

Norfolk. February 17, 2000. - August 1, 2000.

Present: KASS, GREENBERG, & LENK, JJ.

*Limitations, Statute of. Practice, Civil,* Statute of limitations.

Where a condominium trust was aware in 1978 that a recently repaired roof
was leaking, a complaint filed in 1984 seeking to hold the condominium
developer and others liable for the defects was barred by the applicable
contract, tort, and G. L. c. 93A statutes of limitations, and should have
been dismissed. [760-763]

CIVIL ACTION commenced in the Superior Court Department on
September 20, 1984.

The case was heard by *Suzanne DelVecchio,* J.

*Dennis E. McKenna* for the defendants.

*Henry P. Sorett* for the plaintiff.

KASS, J. Trustees of a condominium unit owners' organization
formed in accordance with G. L. c. 183A, § 10, brought a claim
for damages against the developer of the condominium arising
out of a defective roof. We decide that the grounds for the
causes of action against the defendants were knowable by the
trust as early as February, 1978, and were barred by the applic-
able statutes of limitations by the time the complaint was filed
in 1986 against the residual defendants. Accordingly, we reverse
the judgment.

1. *Facts.* By master deed dated June 10, 1977, the defendant

---

[1]This is the designation of the plaintiff in the pleadings, and we adopt it.
Article I of the declaration that creates the trust provides that the trust shall be
named "Beaconsfield Towne House Condominium Trust." The pleadings do
not name the current trustees of the trust.

[2]Randi Zussman, Michael Perry, First Construction Corporation, and
Condominiums, Inc.

Randi Zussman (also known as Selma G. Zussman) submitted an apartment house property at 120 Beaconsfield Road, Brookline (120), to the condominium regime of G. L. c. 183A. Beaconsfield Townhouse Condominium Trust (trust), the plaintiff, is the unit owners' organization established by the master deed to manage and regulate the condominium. See G. L. c. 183A, § 10.[3] From the start, the roof leaked. In 1984, the trust, on behalf of the condominium unit owners, brought an action against Brookline Roofing & Sheet Metal Works, Inc., the roofer that had made repairs to the roof immediately prior to the conversion of 120 to a condominium. The complaint named as a codefendant Edward M. Traiger, the principal officer and stockholder of the corporate defendant. For convenience, we shall refer to those corporate and individual defendants as "the roofing contractor."

In 1986, the plaintiff trust, with leave of court, amended its complaint to name as additional defendants David Zussman and his wife,[4] the persons who owned 120 prior to its conversion to a condominium, a corporate general contractor that had an identity of interest with the condominium developer, and a company involved with the marketing of the condominium. We shall refer to these parties as the Zussman defendants.[5] On appeal, the residual interested parties are the trust, as plaintiff, and the Zussman defendants.[6] The theories of the action against the defendants are that they misrepresented the nature of a ten-year roof guarantee to the condominium buyers, that they did so unfairly and deceptively, and that they acted in breach of a fiduciary duty to the condominium buyers. The case was tried without jury before a judge of the Superior Court, who found and ruled for the trust and ordered the Zussman defendants to pay damages in the amount of $75,964 and legal fees and costs

[3]Under G. L. c. 183A, § 10(*b*)(4), a condominium unit owners' organization has the power to conduct litigation involving, among other things, common areas and facilities of the condominium.

[4]More precisely, David Zussman had owned 120 from January 22, 1968, to December 8, 1970, when he conveyed the property to his wife, Selma, as trustee of 120 Beaconsfield Realty Trust (120 BR Trust). 120 BR Trust operated 120 as a rental property until the conversion to condominium on June 16, 1977.

[5]There is a history of grievance by the trust against the Zussman defendants. See *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 401 Mass. 480 (1988), *S.C.*, 416 Mass. 505 (1993).

[6]The roofing contractor settled with the plaintiff for $32,500.

in the amount of $62,462. The principal ground of appeal is that the claims against the Zussman defendants were barred by the statute of limitations.

There had been a history of roof leaks at 120 known to many of the buyers of condominium units because they had been tenants when the property was operated as a rental apartment house. Those buyers, consequently, were concerned that the roof be made tight. The Zussman defendants represented that the property would be "re-roofed," and that the buyers would have the benefit of a ten-year guarantee.

For the re-roofing, Zussman hired[7] the roofing contractor to place a new roof over the old roof. When that work was completed, the roofing contractor delivered on the billhead of Brookline Roofing & Sheet Metal Works, addressed to First Construction Corporation, a document dated July 1, 1977, stating: "All roofing work is guaranteed to be sound and watertight for a period of 10 years from the date of completion at 120 Beaconsfield Road[,] Brookline." The roofing contractor delivered the guarantee on pain of not receiving the final payment for its work from the Zussman defendants. Although the roofing contractor operated under the business slogan, "The Brookline Way is the Right and Only Way," putting a new roof over the existing one proved to be quite the wrong way. There was condensation between layers and soon, very soon, new leaks developed, often manifesting themselves in the form of dark stains on the ceilings of the apartments below the roof. This occurred before sale of the condominium units and, upon the demand of the Zussman defendants, the roofing contractor did some remedial work.

Between early July, 1977, and late October, 1977, the sale of most of the condominium units was completed, and on November 1, 1977, persons elected by the unit owners assumed

---

[7]The entity through which Zussman hired the roofing contractor was Zussman's wholly owned First Construction Corporation. In the ownership, conversion, improvement, and marketing of the condominium at 120, David Zussman was the dominant figure, operating through a variety of trusts and corporations. We assume, for purposes of the statute of limitations analysis, that the various entities and persons through whom David Zussman dealt were sufficiently confusing to a person dealing with them to invoke the "see through" principles discussed in *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968). See *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 732-736 (1991); *Pepsi-Cola Metropolitan Bottling Co.* v. *Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985).

office as trustees of the trust. The new trustees received the
roofing contractor's guarantee sometime before February 2,
1978. On that date, Robert Hochberg, a unit owner and trustee
(as well as a lawyer) wrote to the roofing contractor complain-
ing that the roof leak problems persisted and demanding that
the roofing contractor make it right. There was a follow-up let-
ter in April, but still no action by the roofing contractor. At a
trustees meeting held May 11, 1978, the trustees and unit own-
ers discussed the gravity of the roof problem, including the pos-
sibility that the roof might need to be replaced in its entirety.
On June 23, 1978, Hochberg fired off a c. 93A letter to the roof-
ing contractor, and that got his attention. The roofing contractor
came to the property and made repairs.[8] Those repairs seemed
to work, but early in 1979, the roof began to leak again.

The trustees engaged a third roofing contractor to make more
repairs in 1980 and 1981. Those efforts continued to be short of
a full roof replacement, a solution the trustees did not turn to
until after this action was initiated in 1984.

2. *The statute of limitations.* Reading the amended complaint
(which added the Zussman defendants in 1986)[9] in the light
most favorable to the plaintiff, the claims against the Zussman
defendants are in the nature of tort, i.e., that the Zussman
defendants misrepresented the quality of the roof being
delivered, that the roof and the utility of the roofing contractor's
guarantee were unfairly and deceptively represented, hence
actionable under G. L. c. 93A, and that the Zussman defendants
acted in breach of a fiduciary duty to the plaintiff by misrepre-
senting to the condominium buyers the quality of the roof and
the utility of the roofing contractor's guarantee.[10] The count last

---

[8]The record discloses that, in the interim, the trustees had some repairs
made in late June or early July by another roofer, Penshorn Roofing Company,
Inc.

[9]We need not consider whether the amendment to the complaint may relate
back to September 20, 1984, the date on which the complaint was filed against
the roofing contractor, because by that date, as we shall see, all applicable
statutes of limitations would also have run. The answer to the amended
complaint by the Zussman defendants pleaded the statute of limitations.

[10]For the principle that an action for breach of fiduciary duty is a tort ac-
tion, see *Kirley* v. *Kirley*, 25 Mass. App. Ct. 651, 653-654 (1988). See also
*Houle* v. *Low*, 407 Mass. 810, 813 (1990); *Demoulas* v. *Demoulas Super
Mkts., Inc.*, 424 Mass. 501, 517 (1997).

described, i.e., the one for breach of a fiduciary duty, appears as count V in the amended complaint.[11]

Counts III and IV have as their underlying theory intentional and negligent misrepresentation, tied to c. 93A. Misrepresentation is subject to a three-year statute of limitations. G. L. c. 260, § 2A. The c. 93A claims are subject to a four-year statute of limitations. G. L. c. 260, § 5A. Count V, as noted (see note 10, *supra*), sounds in tort and is subject to a three-year statute of limitations.

As our recitation of the facts shows, the trust acquired independent trustees (i.e., other than the Zussmans or their employees) on November 1, 1977, and at that time there were signs of roof problems. By February 2, 1978, the trust was so aware of the roof problems that it began to take steps to hold the roofing contractor accountable. By that date the trust was incontestably aware that the roof was not functioning well. Applying the statutes of limitations that we have mentioned, the trust's action against the Zussman defendants must have been brought before February 2, 1981, as to the claims sounding in tort and before February 2, 1982, as to the c. 93A claims.[12,13]

To avoid the bar of the statute of limitations, the trust relies

[11]On the record, this is the only count that survives a stipulation of the parties dismissing all other counts against the Zussman defendants. That stipulation was docketed August 11, 1987. The counts involved in the stipulation of dismissal, namely, counts III, IV, VI, and VII, were also the subject of a summary judgment order in favor of the Zussman defendants made by the Superior Court judge who later presided at the trial of the case. By a posttrial order, the Superior Court judge "reversed" the stipulation and order for summary judgment. On our view of the case, we need not decide whether counts III, IV, and VI properly came back to life. Count VII, which alleged a conspiracy, was described by the trial judge as having been "dropped."

[12]To the extent any count in the trust's complaint might be interpreted as an action for damages "arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property," see G. L. c. 260, § 2B, such a claim must also have been brought before February 2, 1981. Although the complaint unmistakably sounds in tort, if taken as a contract action, the six-year statute of limitations would also have run before the complaint was filed.

[13]The Zussman defendants argue that the trust may not maintain a claim based on promises or representations to individual condominium unit buyers. Generally, a unit owners' organization formed conformably with G. L. c. 183A, § 10, may maintain an action for negligent construction of common area. *Cigal* v. *Leader Dev. Corp.*, 408 Mass. 212, 218 (1990). *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 237 (1985). The claimed breach of fiduciary duty, although it involved the seller and buyers, pertains to common area, and as

on the "discovery rule," i.e., that a cause of action does not accrue if the injury is unknowable. Seminal cases in this regard are *Hendrickson* v. *Sears*, 365 Mass. 83, 90 (1974) (defect in title certificate inherently unknowable to client), and *Franklin* v. *Albert*, 381 Mass. 611, 620 (1980) (patient unaware and reasonably could not have been aware of the existence of unreported X-ray findings indicating his potentially serious condition). The limit of the discovery rule was stated, appropriately to our present purpose, in a case involving a roof defect. In *Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551, 555 (1977), the plaintiff was aware of a roof leak but undertook to extend the date when the action accrued to the point where it first became aware of the full extent of the problem. We held it to be immaterial that the plaintiff, when it first became aware that a roof problem existed, did not then learn of the full dimensions of the problem until a later date. *Ibid.* "[T]he statute of limitations does not stay in suspense until the full extent, gravity, or permanence" and consequences of the injury are known. *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 649 (1984).

But, the trust argues, it could not have known until after commencement of litigation against the roofing contractor and deposition of the roofing contractor that the roofing contractor's guarantee, upon which they relied, had been obtained through economic duress.[14] The statute of limitations, the trust contends, was tolled until it became aware of that circumstance. Prescinding from the question whether a conclusion of economic duress is supportable on the facts, the initial weakness in this argument is that the trust had the guarantee in hand since before February 2, 1978, and was in a position to interpret it and to study its origins. More to the point, the trust had claimed on the guarantee and, while the roofing contractor was indifferently responsive and indifferently effective in its responses to the demands of the trust, the roofing contractor did not repudiate the guarantee and undertook a variety of roof repairs in an effort to make good its obligations under the guarantee. Indeed, the roofing contractor

such may well be maintained by the unit owners' organization. See *Cigal* v. *Leader Dev. Corp.*, *supra* at 219. We need not decide the question as we consider the bar of the statute of limitations determinative.

[14]The Zussman defendants were free to assign the guarantee by delivery of it to the trust. The guarantee contained no limitations on assignment. Unless assignment is expressly forbidden, a contractual right can be assigned. *American Employers' Ins. Co.* v. *Medford*, 38 Mass. App. Ct. 18, 22 (1995).

admitted the guarantee in its answer to the trust's complaint, and, ultimately, settled with the trust.

There is no merit to the proposition that knowledge of the asserted duress was of significance to the trust because the roofing contractor, by conceding the guarantee and performing under it, had waived a defense of duress as to the guarantee. To repudiate an agreement on the ground that it had been made under duress, a party must complain promptly of the coercive statements that it claims had forced it into the contract. Silence, acquiescence, or performance of the contract are among the ways in which the defense of duress is waived, or, to put it another way, to ratify the contract claimed to have been entered into under duress. *Ford* v. *Retirement Bd. of Lawrence*, 315 Mass. 492, 496 (1944). *In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir. 1989).

The circumstances under which the roofing contractor delivered the guarantee cannot, as matter of law, be a basis for extending the period during which the trust might have made a claim against the Zussman defendants based on their representations concerning the quality of the roof that the condominium purchasers would receive and concerning the guarantee of which the trust was to have the benefit. Contrast *Riley* v. *Presnell*, 409 Mass. 239, 240 (1991), in which the question when the plaintiff knew or should have known that he was injured was one of fact.

The judgment is reversed and judgment shall be entered for the remaining defendants.

*So ordered.*