Locke, J.
INTRODUCTION
Plaintiff Gregory P. Burke seeks to recover for property damage to his mobile home alleging breach of contract by defendant Foremost Insurance Company and breach of warranty by defendant Fleetwood Travel Trailers of Virginia, Inc. This matter is now before the court on separate motions for summary judgment by defendants Foremost Insurance and Fleetwood. On October 20, 2004, a hearing was held on both summary judgment motions. For the reasons set forth below, Foremost Insurance’s Motion for Summary Judgment is ALLOWED; and Fleetwood’s Motion for Summary Judgment is ALLOWED.
BACKGROUND
This court summarizes the relevant facts in the light most favorable to the plaintiff. Remy v. MacDonald, 440 Mass. 675, 676 (2004).
On May 9, 2002, plaintiff notified Foremost Insurance that his mobile home had suffered two types of damage: the interior of the trailer had extensive mold damage and there was a large hole in the roof. Foremost Insurance paid part of the claim but denied the claim for water damage. The denial was based on a policy exclusion for manufactured defects and loss caused by leakage from rain.
Plaintiffs father, Philip Burke, had purchased the mobile home from Fleetwood on May 1, 1992. The mobile home was a 1992 Prowler Regal Trailer. It was kept on a Cape Cod campground. From the time purchased until 2000, plaintiffs father used the mobile home on the weekends six months out of the year. (The campground was closed from October through April.) Plaintiffs father made numerous repairs to the mobile home dating back to the first year that it was bought.
On June 13, 2000, plaintiffs father died. Plaintiff then took over the loan payments and maintenance of the mobile home. While cleaning out his father’s office, plaintiff found a folder containing Fleetwood documents. Amongst the documents was a “Full One-Year Warranty” to “the first retail purchaser and his transferee.”
Plaintiff spoke with Mr. Doddi, Fleetwood’s Northeast Sales Representative. Doddi stated that the roof defect was a known problem. He also stated that the mobile home was insured for a year and the roof was insured for twelve (12) years under a separate warranty.
Effective November 13, 2001 through November 13, 2002, plaintiff insured the mobile home with Foremost Insurance. Without inspecting the mobile home or its rubber roof, Foremost Insurance issued the policy. In pertinent part, the policy states,
We insure risk of direct, sudden and accidental physical loss to the property described in Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property unless the loss is excluded elsewhere in this policy.
We do not insure loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently to the loss.
10. Loss caused by:
a. Wear and tear, marring, scratching, deterioration; or
b. Latent defect, mechanical breakdown, manufactured defect, mechanical failure.
15. Loss due and confined to leakage from rain, sleet or snow or its resulting damage whether or not wind driven.
After leaving it unattended for six months, plaintiff opened the mobile home on May 8, 2002 and observed extensive water damage to the interior, a large hole in the roof, and debris in the hole. The interior of the mobile home had been destroyed by mold and mildew.
On May 9, 2002, plaintiff filed a property damage claim with Foremost Insurance. Adjuster Ed Levesque was assigned to investigate the claim. The investigation revealed that the roof was defective and had been extensively patched over the years. He found at least seven patches that had been placed over a nine-year period. The defect caused openings in the roof surface which ultimately allowed water seepage, resulting in rotten wood in the roof. Rotted plywood sheathing under the rubber roof of the mobile home indicated long-term, repeated exposure to rainwater and melting snow. The combination of problems caused the water leakage, the consequence of which was the water and mold damage discovered by the plaintiff in May of 2002.
As part of the investigation, Levesque spoke with David Majors, who owns Majors RV Service Center. Since 1992, Majors had been repairing and patching the mobile home’s roof and had done the majority of the repairs when plaintiffs father was using the mobile home.
From the numerous repairs reported by Majors, the roof leaking was an ongoing condition from the time plaintiffs father purchased the mobile home in 1992. Specific fixes included the Dufours Company repairing the root at a cost of $512, in 1993 and Majors repairing and patching the roof in 1997.
On June 22, 2002, Majors examined the roof and opined that the water leakage and resulting water damage arose as a result of a manufactured defect in the rubber roof of the mobile home, which was a *627 well-known problem with that type of roof. Majors told the plaintiff that the pins inside the roof membrane had pierced the membrane in 1993, allowing water to seep in over time.[2]
DISCUSSION
“Summary judgment is appropriate where there is no genuine issue of material fact and, where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law.” O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000); Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating that the pleadings present no genuine issue of fact on every relevant issue and its entitlement to a judgment in its favor. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. The opposing party may not rest on the allegations of the pleadings. Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise a question of material fact sufficient to defeat a summary judgment motion. Madsen v. Erwin, 395 Mass. 715, 721 (1985).

I. Foremost Insurance Company

Plaintiff contends that because Foremost Insurance paid some of the claim, it must treat the whole claim as a covered loss; and, therefore, is in breach of the insurance contract by denying payment for the water damage. Defendant Foremost Insurance contends that plaintiffs claim is specifically excluded by the insurance contract as it does not cover property damage due to a manufactured defect.
“The interpretation of an insurance contract is a question of law for the trial judge and the reviewing court.” Norfolk & Dedham Mut. Fire Ins. Co. v. Quane, 442 Mass. 704, 707 (2004). “Likewise, the application of policy language to known facts presents a question of law for the court.” Kelleher v. Am. Mut. Ins. Co. of Boston, 32 Mass.App.Ct. 501, 503 (1992), citing Sherman v. Employer’s Liab. Assurance Co., 343 Mass. 354, 356 (1961).
“The terms of an insurance policy will be interpreted according to the ‘fair meaning of the language used, as applied to the subject matter.’ ” Norfolk & Dedham Mut. Fire Ins. Co., 442 Mass. at 707. Interpretation is governed by familiar rules of construction. When construing language in an insurance policy, a court considers what an objectively reasonable insured, reading the relevant policy language, would expect to be covered. W. Alliance Ins. Co. v. Gill, 426 Mass. 115, 117 (1997), quoting Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689 (1990). “Unambiguous words in an insurance policy exclusion must be interpreted in their usual and ordinary sense.” County of Barnstable v. Am. Fin. Corp., 51 Mass.App.Ct. 213, 215 (2001), citing Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999). “While reading and understanding an insurance policy’s provisions as to coverages, exclusions, and exceptions is often a formidable task, difficulty in comprehension does not equate with ambiguity.” Massachusetts Prop. Ins. Underwriting Ass’n v. Wynn, 60 Mass.App.Ct. 824, 827 (2004). Nor is ambiguity created “simply because a controversy exists between the parties, each favoring an interpretation contrary to the other.” Id.
The law is well-settled that exclusions from coverage are to be strictly construed, and any ambiguity in an exclusion must be construed against the insurer. Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co., 46 Mass.App.Ct 500, 504 (1999). However, “(w]hen the terms of an exclusion are plain and free from ambiguity the court does not construe them strictly against the insurer.” County of Barnstable, 51 Mass.App.Ct. at 215, quoting Bagley, 430 Mass. at 457 n.2.
“A term is ambiguous only if it susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” County of Barnstable, 51 Mass.App.Ct. at 215, quoting Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). “An exclusionary clause may be ambiguous, however, when read in the context of the entire policy or as applied to the subject matter.” Id. quoting Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 475-76 (1987).
Plaintiffs insurance policy explicitly states that loss caused by “manufactured defect” or loss due to leakage from rain and snow will not be covered. “Indeed, the Massachusetts Supreme Judicial Court has affirmed application of an anticoncurrent cause provision similar to the clause in the case at hand.” Preferred Mut. Ins. Co. v. Meggison, 53 F.Sup.2d 139, 142 (1999) (discussing the vast majority of states upholding anticoncurrent cause provisions), aff'd, 246 F.3d 30 (1st Cir. 2001). See, e.g., Alton v. Mfrs. & Merchants Mut. Ins. Co., 416 Mass. 611, 613-15 (1993) (holding that anticoncurrent cause provision barred coverage); Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 30-31 (1993) (suggesting that anticoncurrent language in an insurance contract could operate to exclude coverage).
Anticoncurrent causation provisions have appeared in recent years in response to the concurrent causation doctrine under which some courts have found that insurers are obligated to pay for damages resulting from a combination of covered and excluded perils, if the efficient proximate cause is a covered peril. Preferred Mut. Ins. Co., 53 F.Sup.2d at 142, citing Stephen P. Pate, Recent Developments in Property Insurance Law, 33 Tort & Ins. L.J. 659 (Winter 1998). “Anticoncurrent causation provisions in insurance contracts avoid application of the doctrine by expressly stating that a loss is excluded from coverage if *628 it results from a combination of covered and excluded perils.” Id.
The court discerns no ambiguity in the policy or its exclusion clause. An integrated reading of the liability coverages, exclusions, and exceptions manifests an intent to exclude loss caused by manufactured defect and weather, such as rain. “An objectively reasonable insured reading the policy language would not expect to be covered.” Massachusetts. Prop. Ins. Underwriting Ass’n, 60 Mass.App.Ct. at 828, citing Hingham Mut. Fire Ins. Co., 46 Mass.App.Ct. at 504. The roof leaking was an ongoing or frequent occurrence, calling for numerous repairs. Plaintiffs counsel conceded that the water damage to the roof was caused by a manufactured defect. David Majors, of Majors RV Service Center, identified the roof leakage as a manufactured defect common to the type of rubber roof the mobile home had. Foremost’s insurance policy states it excluded coverage for manufactured defect and Massachusetts law permits such anticoncurrent causation provisions. Therefore, Foremost Insurance is entitled to summary judgment on Count I (breach of insurance contract claim).

II. Fleetwood Travel Trailer of Virginia, Inc. A. Implied Warranty

In Count II of his Complaint, plaintiff lists numerous implied warranty claims against Fleetwood including, but not limited to, warranty for fitness for particular purpose, warranty of merchantability, and warranty of habitability. Fleetwood contends that any claim that plaintiff had expired pursuant to G.L.c. 106, §2-318; while plaintiff contends that the statute of limitations has not expired on his claims.
For breach of implied warranty claims arising under art. 2, the Uniform Commercial Code (UCC) imposes a three-year statute of limitations. See, e.g., Fine v. Huygens, DiMella, Shaffer & Assocs., 57 Mass.App.Ct. 397, 400 (2003) (discussing warranty for fitness of a particular purpose, §2-315; and warranty of merchantability, §2-314). The warranty of habitability also has a three-year statute of limitations pursuant to G.L.c. 260, §2B. Albrecht v. Clifford, 436 Mass. 706, 716 (2002) (establishing a warranty of habitability in Massachusetts). Additionally, any claims arising under G.L.c. 106, §2-318 (Lack of Privity in Actions Against a Manufacturer), must be commenced within three years.
In the case of a leaky roof, the cause of action accrues when the roof leak is discovered. White v. Peabody Constr. Co., Inc., 386 Mass. 121, 130 (1982); Mansfield v. GAF Corp., 5 Mass.App.Ct. 551, 555 (1977). “The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused [him] injury.” Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990). See also Hendrickson v. Sears, 365 Mass. 83, 89 (1974) (“a cause of action accrues on the happening of an event likely to put the plaintiff on notice”).
The discovery rule operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured. See Albrecht, 436 Mass. at 714. The discovery rule applies when the wrong is “inherently unknowable.” Olsen v. Bell Tel. Labs., Inc., 388 Mass. 171, 175 (1983). The “inherently unknowable” standard is no different from and is used interchangeably with the “knew or should have known” standard. Albrecht, 436 Mass. at 714 (2002); Williams v. Ely, 423 Mass. 467, 473 n.7 (1996).
The roof leaks began shortly after the mobile home was purchased and occurred repeatedly. The uncontroverted evidence includes repairs in 1992 by plaintiffs father, followed by specific repairs in 1993 by Dufours Company and in 1997 by Majors RV Service Center. Yet, plaintiff s Complaint was not filed until 2003.
Plaintiff correctly argues that §2-318 overcomes the lack of privily between the plaintiff and the defendant when the plaintiff did not purchase the goods from the defendant. While “the purpose of this section is to give certain beneficiaries the benefit of the same warranty which the buyer received in the contract of sale,” §2-318 (UCC Comment n.2), the plaintiff does not thereby acquire greater rights than the original purchaser. Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 741 (2000). “The subsequent purchaser bears the burden of ascertaining the existence of any limitations on the implied warranties.” Id. Simply put, plaintiff may not extend the running of the statute by ignoring events which triggered a cause of action because they occurred when his father owed the mobile home.
“The limit of the discovery rule was stated, appropriately to our present purpose, in a case involving a roof defect.” Beaconsfield Townhouse Condo. Trust v. Zussman, 49 Mass.App.Ct. 757, 762 (2000). “In Mansfield v. GAF Corp., 5 Mass.App.Ct. 551, 555 (1977), the plaintiff was aware of a roof leak but undertook to extend the date when the action accrued to the point where it first became aware of the full extent of the problem.” Beaconsfield Townhouse Condo. Trust, 49 Mass.App.Ct. at 762. The Appeals Court “held it to be immaterial that the plaintiff, when it first became aware that a roof problem existed, did not then learn of the full dimensions of the problem until a later date.” Id., citing Mansfield, 5 Mass.App.Ct. at 555. The “ ‘statute of limitations does not stay in suspense until the full extent, graviiy, or permanence’ and consequences of the injury are known.” Id., quoting Gore v. Daniel O’Connell’s Sons, Inc., 17 Mass.App.Ct. 645, 649 (1984). See also Fine, 57 Mass.App.Ct. at 400-01 (discussing statute of limitations applying to a breach of implied warranty).
The “cause of action for leaky roof accrues when leaks are discovered, not when plaintiff later learns no *629 satisfactory repair is possible.” White, 386 Mass. at 130 (explaining parenthetically the cite from Mansfield v. GAF Corp., supra). While the discovery rule is an equitable exception, tolling the statute of limitations when a reasonably prudent person in plaintiffs position would not have known or had reason to know that he may have been harmed by the conduct of another, here, there is nothing inherently unknowable about the cause of action.
Here, there can be no genuine dispute but that plaintiffs father, Philip Burke, knew of the defects in the mobile home’s roof for at least three years prior to his death in 2000. Treating all of the implied breaches of warranty as a single argument, plaintiff knew or should have known of a cause of action accruing more than three years prior to filing his Complaint in 2003. See Williams, 423 Mass. at 473 n.7 (explaining that the “inherently unknowable” standard is no different from and is used interchangeably with the “knew or should have known” standard). As plaintiffs claims are barred by the statute of limitations, Fleetwood is entitled to summary judgment on Count I’s claim of breaches of implied warraniy.
B. Express Warraniy
Plaintiff contends that the mobile home’s roof is covered by an express warranty, while Fleetwood contends that the express warranty has expired. An “express warranty claim is subject to the four-year statute of limitations for contracts under G.L.c. 106, §2-725.” Rosario v. M.D. Knowlton Co., 54 Mass.App.Ct. 796, 803 (2002). A cause of action accrues when the breach occurs, regardless of the aggrieved party’s lack of knowledge of the breach. G.L.c. 106, §2-725. The cause of action accrues when the breach is or should have been discovered where a warraniy explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance. G.L.c. 106, §2-725(2).
The summary judgment record contains a written, express “Full One-Year Warranty” that was apparently provided at the time of the original purchase of the trailer. The written warranty was given by Fleetwood to the plaintiffs father when the mobile home was purchased in 1992. In addition, the plaintiff asserts that Fleetwood’s Northeast Sales Representative, Mr. Doddi, advised him that Fleetwood, aware of the potential for defects in its trailer roofs, had extended the warraniy to a 12-year term. Under either a one-year or 12-year warranty, however, the plaintiff cannot prevail against a statute of limitations claim in this case. From the first year that plaintiffs father (the original owner) bought the mobile home, the roof leaking was indicative of a breach of warraniy. Discovery was not only possible prior to the end of the 12-year express warranty period, it, in fact, occurred as evidenced by the repairs done by plaintiffs father frequently, the Dufours Company in 1993, and Majors RV Service Center in 1997.
If the creation of an express warranty was determined to be a genuine issue of material fact, then the issue is mooted by the statute of limitations under §2-725. As plaintiff did not file his Complaint until 2003, any claim for breach of an express warranty is barred by the four-year statute of limitations. As plaintiffs claims are barred by the statute of limitations, Fleetwood is entitled to summary judgment on Count II’s claim of breach of expressed warranty.
CONCLUSION
Based on the summary judgment record, Foremost Insurance and Fleetwood have established the absence of a triable genuine issue of material fact and are entitled to judgment as a matter of law. On contract grounds, defendant Foremost Insurance’s Motion for Summary Judgment is allowed as the coverage exclusion for manufactured defect applies. On statute of limitations grounds, defendant Fleetwood’s Motion for Summary Judgment is allowed as the statute of limitations has tolled for claims of breaches of implied and expressed warranties.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment of defendant Foremost Insurance Company be ALLOWED and the Motion for Summary Judgment of defendant Fleet-wood Travel Trailer of Virginia, Inc. be ALLOWED.

At the October 20, 2004 hearing, plaintiffs counsel conceded that the water damage to the roof was caused by a manufactured defect.