DENISE DOHERTY *vs.* ADMIRAL'S FLAGSHIP CONDOMINIUM TRUST & others.[1]

No. 10-P-840.

Suffolk. June 2, 2011. - August 15, 2011.

Present: CYPHER, GRAINGER, & RUBIN, JJ.

*Practice, Civil,* Motion to dismiss, Complaint, Amendment of complaint. *Limitations, Statute of. Negligence,* Condominium trust. *Trespass. Nuisance. Contract,* Performance and breach. *Real Property,* Trespass, Nuisance, Condominium.

In a civil action brought in 2009 by a plaintiff alleging that roof leaks starting in 2004 had led to toxic mold infiltration in her condominium unit, the judge erred in concluding that the plaintiff's tort claims were barred by the three-year statute of limitations, where the plaintiff's negligence claim was tolled by the discovery rule, given that, without some indication of a hazardous contamination, the plaintiff could not have been aware that she was bring exposed to toxic mold, regardless of when the leak began [106-110]; and where the complaint alleged sufficient facts to support claims of trespass and nuisance from leaks that occurred during the statutory period [110-111].

In a civil action brought in Superior Court by a plaintiff alleging that roof leaks had led to toxic mold infiltration in her condominium unit, the judge properly dismissed the plaintiff's third-party beneficiary contract claims, where the plaintiff's bare allegation that she was an intended beneficiary of the contracts in question, with no additional facts regarding the defendants' intent, failed to state a claim for relief [111]; further, the judge did not abuse his discretion in denying the plaintiff's motion to amend those counts, where the proposed amendments did not remedy the failure in pleading present in the first complaint [111-112]; however, the judge erred in failing to grant the motion to amend with respect to the plaintiff's remaining contract count against the defendant condominium trust, where the proposed amendment significantly changed the cause of action pleaded [112-113].

CIVIL ACTION commenced in the Superior Court Department on February 13, 2009.

The case was heard by *Thomas E. Connolly*, J., on a motion

---

[1]Lundgren Management Group, Inc., and Construction by Design, Ltd.

to dismiss, and a motion to amend the complaint was heard by
*Paul E. Troy*, J.

*Robert J. Doyle* for the plaintiff.

*Edmund A. Allcock* for Admiral's Flagship Condominium
Trust.

*William P. Rose* for Construction by Design Ltd.

CYPHER, J. After roof leaks led to toxic mold infiltration in
her condominium unit, the plaintiff, Denise Doherty, filed a
complaint alleging negligence, nuisance, trespass, misrepresenta-
tion, and breach of contract against the defendants, Admiral's
Flagship Condominium Trust (trust); Lundgren Management
Group, Inc. (Lundgren); and Construction by Design, Ltd.
(Design). The defendants moved to dismiss the complaint pur-
suant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), on the
grounds that the plaintiff's claims were either barred by the ap-
plicable statute of limitations or insufficiently pleaded. A judge
of the Superior Court agreed, and he dismissed the complaint in
its entirety. A different judge later denied the plaintiff's motion
to amend the complaint. On appeal, the plaintiff argues that the
trial judges erred both in dismissing her complaint and in deny-
ing her motion to amend. We affirm in part and reverse in part.

1. *Background.* The following is taken from the plaintiff's
complaint.[2] In February, 2002, the plaintiff purchased a unit in
the Admiral's Flagship condominium, at 514 Boatswains Way
in Chelsea. In 2004, leaks developed in the roof or in the area
just below the roof above the plaintiff's unit. The exterior area
in question is part of a common area of the condominium. At
all relevant times, the common areas of the condominium were
managed by Lundgren, who in turn hired Design to maintain
and repair the common areas. The leak led to ceiling cracks and
loosening plaster in the plaintiff's unit, and she requested that
repairs be made. Any repairs made were either untimely or
inappropriate.

In 2005, an employee of Lundgren noted that the threshold of
the door leading from the plaintiff's unit to her deck was rotting.

___

[2]The operative complaint at issue is the plaintiff's first amended complaint.
The initial complaint does not appear in the record, and it was not served on
the opposing parties. For the sake of convenience, we refer to the first amended
complaint as the "complaint" or the "first complaint."

Thereafter, in February, 2006, the plaintiff noticed mushrooms and water infiltration on the same threshold and notified Lundgren. It replied that the threshold was rotted and required replacement. Lundgren hired Design to complete the repair, but it failed to perform "in a timely manner and left the debris exposed in the plaintiff's bedroom."

Later in 2006, Lundgren hired Gordon Mycology to conduct mold testing in the plaintiff's unit. On March 10, 2006, Gordon Mycology issued a report "disclosing the presence of hazardous mold in unsafe levels in [the] plaintiff's unit caused by water infiltration and chronic dampness." Following this discovery, Lundgren promised the plaintiff that Design would repair the leaks and that the mold would be removed. A mold remediation was attempted but failed, and mold remains in the unit. On September 2, 2008, the plaintiff's doctor ordered her to vacate her unit due to the presence of the mold. Although the plaintiff has continued to request repairs of the leaks and chronic dampness, as well as a full remediation of the mold, no further action has been taken. She filed suit against the defendants on February 13, 2009, claiming that due to the defendants' failure to repair, she has suffered severe, permanent health problems, lost income, loss of her personal property, and loss of the value of her condominium unit.[3]

2. *Motion to dismiss.* "We review the allowance of a motion to dismiss de novo" and "accept as true the allegations in the complaint and draw every reasonable inference in favor of the plaintiff." *Curtis* v. *Herb Chambers I-95, Inc.,* 458 Mass. 674, 676 (2011). In order to withstand a motion to dismiss, the complaint must contain enough factual allegations "to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true . . . ." *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 636 (2008), quoting from *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555-556 (2007). Where the factual allegations do not plausibly

---

[3]Although the damages claimed in the plaintiff's complaint could have been more clear, given that the factual allegations lead up to, and largely center on, the defendants' failures in relation to harm caused by mold contamination, we accordingly view the complaint as alleging damages caused by that contamination rather than simple water damage.

suggest an entitlement to relief, the complaint must be dismissed. *Ibid.*

On the defendants' motions to dismiss, the judge ruled in their favor on all counts of the complaint, citing only the reasoning stated in their memoranda in support of their motions. Reflecting the arguments raised by the defendants below, on appeal the plaintiff claims that her negligence, trespass, and nuisance claims are not barred by the statute of limitations,[4] and that her breach of contract claims against the trust, Lundgren, and Design are properly pleaded contract actions that do not sound in tort. We address each claim in turn.

a. *Statute of limitations on tort claims.* Tort claims in Massachusetts are governed by the three-year limitations period set forth in G. L. c. 260, § 2A, amended by St. 1973, c. 777, § 1. See *Khatchatourian* v. *Encompass Ins. Co.*, 78 Mass. App. Ct. 53, 57 (2010). Thus, the plaintiff's claims for negligence, nuisance, and trespass (counts I-III of her complaint) must have accrued within three years of the date she filed her complaint, or fall under the protection of an applicable exception, to be within the statutory limitations period.

i. *Negligence.* Although the first instance of a water leak allegedly occurred in 2004, well over three years before the plaintiff filed her complaint in 2009, she maintains that her negligence claim is tolled by the discovery rule.[5]

Generally, a cause of action in negligence "accrues when some harm has occurred even though the full extent and nature of that harm has not been and cannot be established immediately." *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985). The discovery rule tolls the accrual of a cause of action, however, "in circumstances where the plaintiff did not know or could not reasonably have known

---

[4]The plaintiff makes no apparent argument on appeal in regard to her count alleging misrepresentation "in assuring plaintiff that all leaks would be stopped and all mold removed." See note 5, *infra.* Regardless, that claim was properly dismissed, as the plaintiff failed to allege that the defendants had no intent to complete the repairs at the time the promises were made. See J.R. Nolan & L.J. Sartorio, Tort Law § 8.2, at 243 (3d ed. 2005).

[5]In the plaintiff's brief, her discovery rule argument is not directed at any specific count or counts of her complaint. We limit the argument to her negligence claim on the basis of the language used and the authority cited.

that he or she may have been harmed by the conduct of another." *Koe* v. *Mercer*, 450 Mass. 97, 101 (2007), citing *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 205 (1990). Thus, under the discovery rule, a cause of action accrues when "an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." *Bowen* v. *Eli Lilly & Co.*, *supra* at 207. More specifically, "[w]e do not require that a plaintiff have notice of a breach of duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." *Donovan* v. *Phillip Morris USA, Inc.*, 455 Mass. 215, 228 (2009), quoting from *Bowen* v. *Eli Lilly & Co.*, *supra* at 208.[6]

The plaintiff claims that the limitations clock began running when Gordon Mycology reported the existence of "hazardous mold in unsafe levels" in her unit, and she became aware of the potential injury she was facing. The report in question was issued on March 10, 2006, within the three-year limitations period. The defendants argue that the harm occurred at the time of the initial leak, as the plaintiff "appreciated the leak, the cause and the potential for harm from the leak" at that time.

The question whether the discovery rule applies to circumstances involving a water intrusion outside the limitations period, followed by the later development and discovery of toxic mold, is novel and has not yet been addressed in Massachusetts. Other jurisdictions that have addressed it have applied the rule to such cases. Those courts have held, at the least, that "when the claimant in a toxic mold case experiences physical symptoms that would cause an ordinary person to make an inquiry about the discovery of the cause of the symptoms, that is the point at which the statute of limitations begins to accrue." *Gerke* v. *Romero*, 148 N.M. 367, 372 (Ct. App. 2010). See *Gleason* v. *Borough of Moosic*, 15 A.3d 479, 486-487 (Pa. 2011) (discovery

---

[6]The "knew or should have known" standard does not differ from the terminology used in some cases that a claim is tolled if the facts giving rise to the claim are "inherently unknowable." See *Sheila S.* v. *Commonwealth*, 57 Mass. App. Ct. 423, 426 n.8 (2003), citing *Williams* v. *Ely*, 423 Mass. 467, 473 n.7 (1996); *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 328 n.8 (2001).

rule tolled statute of limitations to time when plaintiffs knew or should have known cause of their physical injuries, an issue of fact for jury where plaintiffs did not link their health problems to hazardous mold until several years after flooding incident in their home); Dutton *vs.* Farmers Group, Inc., Tenn. Ct. App., No. E2009-00746-COA-R3-CV (June 22, 2010) (discovery rule tolled statute of limitations where "[t]oxic mold spores were a latent problem concealed within [p]laintiffs' home" that did not become apparent until years after flooding); *Pirtle* v. *Kahn*, 177 S.W.3d 567, 572-573 (Tex. Ct. App. 2005) (applying discovery rule, plaintiff's cause of action accrued "when she found the leak in her apartment, saw the mold, and immediately drew the inference that the mold caused her illnesses," despite her experiencing health problems for years before discovering mold).

We agree with the foregoing cases that without some indication of a hazardous contamination, the plaintiff could not have been aware that she was being exposed to toxic mold, regardless of when the leak began.[7] Contrary to the defendants' argument, it is not a certainty that all water infiltration will eventually evolve into toxic mold.[8] To conclude otherwise would encourage, and possibly even require, a plaintiff to preemptively file suit the moment water starts to infiltrate a dwelling or other

---

[7]Unlike in the cases cited, because the plaintiff filed suit within three years of the date she discovered the existence of the hazardous mold, rather than within three years of noticing mold-related physical symptoms, we need not determine if accrual is linked to the discovery of the mold itself, or to the health problems that it creates.

[8]The trust and Lundgren argue that applying the discovery rule to this case would be akin to allowing the statute of limitations to "stay in suspense until the full extent, gravity, or permanence" of that same injury is known, which is not permitted under the case law. *Beaconsfield Townhouse Condominium Trust* v. *Zussman*, 49 Mass. App. Ct. 757, 762 (2000), quoting from *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 649 (1984).

Here, the cited language does not apply because the injury claimed does not involve a progression in intensity of the original leaks, but is fundamentally different from the leaks themselves, and was unknown when the leaks occurred. Contrast *Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551, 554-555 (1977) (accrual date of negligence and deceit actions not extended where plaintiff knew of leaks during limitations period, but waited until roof failed to file suit); *Beaconsfield, supra* at 762-763 (claimed misrepresentation of roofing guarantee in relation to leaking roof barred by statute of limitations where both guarantee and leaks were known and apparent during limitations period).

building, before any mold or mold-related injury has even occurred. We accordingly hold that the plaintiff's complaint should not have been dismissed, as the discovery rule applies to the negligence allegations as set forth in her complaint.

ii. *Trespass and nuisance.* The plaintiff next claims that her trespass and nuisance claims are not barred by the statute of limitations because her property was the subject of a continuing water infiltration.

"An action for a continuing nuisance allows a plaintiff whose claim otherwise would be untimely to sue where its property rights are invaded from time to time because of repeated or recurring wrongs, resulting in new harm to the property on each occasion." *Taygeta Corp.* v. *Varian Assocs., Inc.*, 436 Mass. 217, 231 (2002), citing *Carpenter* v. *Texaco, Inc.*, 419 Mass. 581, 583 (1995). This concept equally applies to claims of continuing trespass. *Silverlieb.* v. *Hebshie*, 33 Mass. App. Ct. 911, 913 (1992), citing *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 19 (1987). "[A] continuing trespass or nuisance must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct." *Carpenter* v. *Texaco, Inc., supra* at 583.

The defendants argue that the plaintiff's complaint was properly dismissed because it alleges that a single leak occurred in 2004, but is silent on the point of continuing leaks.[9] The defendants' reading of the complaint is overly narrow. Read together, the factual allegations, which are incorporated into each count of the complaint, can only lead to the inference that the leaks were continuous from 2004 until the filing of the complaint. Those allegations state that following the initial leak in 2004, the plaintiff had a rotting deck in 2005, then more water infiltration in February, 2006, followed by a report of "water *intrusions* and chronic dampness" in March, 2006. Later paragraphs note the presence of "leaks," rather than a single leak, and allege that the leaks and chronic dampness have not

---

[9]In support of their argument, the defendants observe that language from the count alleging trespass (count III), specifically that "[t]he actions of the trust and trustees in permitting water and mold intrusions into plaintiff's unit *constituted* a trespass," is in the past tense.

been repaired, leading to the inference that the leaks were continuing up until the point the complaint was filed. Drawing all reasonable inferences in favor of the plaintiff, as we must, *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. at 676, the complaint alleges sufficient facts to support claims of trespass and nuisance from leaks that occurred during the statutory period.

b. *Breach of contract claims*. The plaintiff alleges in counts VI and VII of her complaint that both Lundgren and Design entered into contracts to repair with the trust, and that she was an intended third-party beneficiary of those contracts.[10] Contrary to the defendants' arguments below, the plaintiff maintains that these counts state a claim for relief and are not subject to the three-year statute of limitations period for tort actions.

The plaintiff's third-party beneficiary claims were properly dismissed. "Under Massachusetts law, a contract does not confer third-party beneficiary status unless the 'language and circumstances of the contract' show that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiary to benefit from the promised performance." *Cumis Ins. Soc., Inc.* v. *BJ's Wholesale Club, Inc.*, 455 Mass. 458, 466 (2009), quoting from *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366-367 (1997). In *Cumis*, the Supreme Judicial Court affirmed the dismissal of a third-party beneficiary claim where the plaintiffs' complaint "assert[ed] merely the conclusion that they were third-party beneficiaries to the defendants' agreements without setting forth any factual allegations concerning the defendants' intentions . . . ." *Id.* at 467. Likewise here, the plaintiff's bare allegation as to each count that she "was an intended beneficiary of said contract," with no additional facts regarding the defendants' intent, fails to state a claim for relief as an intended third-party beneficiary to a contract.

3. *Motion to amend*. Following the entry of the order of dismissal, the plaintiff filed a motion to amend her complaint,[11]

---

[10]The plaintiff also alleges in count V a breach of contract action against the trust. Because we conclude *infra* that the motion to amend should have been allowed as to count V, we need not determine if it should have been dismissed as originally pleaded.

[11]Although the order of dismissal was entered on October 27, 2009, the entry of final judgment did not occur until April 6, 2010. The plaintiff filed

which the judge summarily denied.[12] The plaintiff now argues that the judge abused his discretion in denying her motion as to each count previously discussed.

Rule 15(a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 761 (1974), provides that, following the entry of an order of dismissal, a pleading may be amended with leave of court "and leave shall be freely given when justice so requires." See Smith & Zobel, Rules Practice § 15.2, at 263 (2d ed. 2006). "We review the judge's decision for an abuse of discretion, though consistent with the axiom that 'a motion to amend should be allowed unless some good reason appears for denying it.' " *Spillane* v. *Adams,* 76 Mass. App. Ct. 378, 390 (2010), quoting from *Afarian* v. *Massachusetts Elec. Co.,* 449 Mass. 257, 269 (2007). Such reasons include futility, undue delay, and prejudice to the opposing party. See *Mathis* v. *Massachusetts Elec. Co.,* 409 Mass. 256, 264-265 (1991); *Kennie* v. *Natural Resource Dept. of Dennis,* 451 Mass. 754, 766 (2008), and cases cited.

Because we have already concluded that the plaintiff's complaint states claims as to negligence, nuisance, and trespass, we need not address the denial to amend those counts of the complaint.[13] As to the breach of contract claims against Lundgren and Design, the motion to amend was properly denied. The proposed amendments to those counts did not remedy the failures in pleading present in the first complaint, i.e., the absence of any allegations establishing the defendants' intent to enter into those contracts. The remaining count of the complaint, however, stands on different footing.

Count V of the first complaint alleges breach of contract against the trust, stating that the trust "entered into an agreement with the plaintiff to maintain the common areas and elements of the condominium." The proposed amended complaint

---

her motion to amend in the interim, on November 24, 2009. The gap in time between the dismissal and the entry of final judgment has no bearing on our analysis.

[12]The judge noted only that "[t]o the extent that this court has discretion to permit the filing of an amended complaint after a complaint has been dismissed the court declines to exercise that discretion."

[13]We add that because the order of dismissal is reversed as to those counts, the plaintiff may now amend them as a matter of course. See Mass.R.Civ.P. 15(a).

alleges that the trust "entered into an agreement with the plaintiff to stop the leaks into her unit." Thus, the proposed amendment significantly changes the operative contract from general agreements contained in the master deed, trust document or condominium by-laws, to a specific and separate contract entered into between the trust and the plaintiff. A separate contract would give rise to none of the issues the trust has raised in relation to the pleading in the first complaint.[14] Given this significant change in the cause of action pleaded, the judge should have granted the motion to amend as to count V, and abused his discretion in failing to do so. As noted, leave to amend should be freely given, particularly in this instance where the motion was not unduly delayed[15] and the trust has made no attempt to argue actual prejudice by the amendment.[16]

4. *Conclusion.* The order allowing the defendants' motion to dismiss is reversed as to counts I, II, and III of the complaint, and is affirmed as to counts V, VI, and VII. The order denying the plaintiff's motion to amend is reversed as to count V of the complaint, and is affirmed at to counts VI and VII. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]We offer no opinion regarding the validity of the trust's arguments about the agreement between the plaintiff and the trust contained in the master deed, trust document, or by-laws.

[15]The motion was filed less than one year after the complaint was filed, and one month after the motion to dismiss was allowed.

[16]We do not consider the trust's lone assertion that it would be prejudiced simply by the reinstitution of a dismissed case.