Fabricant, Judith, J.
This action arises out of plaintiffs’ investment in two hedge funds, Dutchess Private Equities, L.P. and Dutchess Private Equities Fund, Ltd. Plaintiffs Cannonball Fund, Ltd., Cannonball Plus Fund, Ltd., East Orient, Ltd., Mark Wenzel, The Trustees of the Geraldine Schwab Irrevocable Trust, and The Carrswold Partnership bring this action individually and derivatively in their capacity as limited partners of nominal defendant Dutchess L.P. and shareholders of nominal defendant Dutchess Ltd. against defendants Dutchess Capital Management, LLC, Dutchess Advisors, LLC, Michael Novielli, Douglas Leighton, Theodore Smith (collectively, the Dutchess defendants), Sullivan Billie, P.C., and Dundee Leeds Management Services. The matter is now before the court on the Dutchess defendants’ and Dundee Leeds’s motion to dismiss and Sullivan Bille’s motion to dismiss. For the reasons explained, the motions will be allowed.
BACKGROUND
For the purposes of these motions, the Court takes as true the following factual allegations of the complaint, as well as all reasonable inferences drawn *306 therefrom in the plaintiffs’ favor. See, e.g., Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998); Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass.App.Ct. 667, 670-71 (2001).,Plaintiffs Cannonball, Cannonball Plus and East Orient (collectively, the Dutchess Ltd. plaintiffs) are all investors in nominal defendant Dutchess Ltd.[1] Plaintiffs Wenzel, the Schwab Trust and Carrswold (collectively, the Dutchess L.P. plaintiffs) are limited partners in Dutchess L.P.[2] Nominal defendants Dutchess L.P. and Dutchess Ltd. are both hedge funds, or investment vehicles, that feed their assets into a master fund, nominal defendant Dutchess Private Equities Fund, Ltd., incorporated in the Cayman Islands.[3] Dutchess L.P. is a limited partnership organized under the laws of Delaware.[4] Dutchess Ltd. is a corporation formed in 2006 under the law of the Cayman Islands. The Court will refer to Dutchess L.P. and Dutchess Ltd. collectively as the funds, where appropriate. The plaintiffs all invested in Dutchess L.P. and/or Dutchess Ltd., both of which, in turn, invested all, or substantially all, of their assets in the master fund.
Dutchess Capital is a Connecticut LLC that does business in Massachusetts and is the general partner of Dutchess L.P. and Dutchess Advisors, and the investment manager of Dutchess Ltd. Dutchess Advi-sors is a Connecticut LLC that does business in Massachusetts and served as a consultant to Dutchess L.P. and Dutchess Ltd.[5] The individual defendants are all affiliated with Dutchess Capital. Leighton and Novielli are principals/managing members of Dutchess Capital and directors of Dutchess Ltd. Smith is Dutchess Capital’s chief operating officer and Dutchess L.P.’s director of corporate finance. Dundee Leeds acted as administrator for both Dutchess L.P. and Dutchess Ltd. Sullivan Bille is a Massachusetts professional corporation that audited Dutchess L.P.’s statements of financial condition as of December 31, 2005, and 2006, and provided unqualified audit opinions for those periods dated March 3, 2006, and April 14, 2007, respectively.
According to the complaint, the Dutchess defendants represented both orally and in writing that prospective investors’ investments in the funds would be protected in three ways. First, companies targeted for investment would have a positive cash flow with which they could repay the funds. Second, the funds would invest only in freely tradable and liquid companies that would permit the funds to convert debt securities into newly-issued stock at less than market price. Third, the funds would lend money only to companies with sufficient assets to secure a substantial portion of the funds’ investments. The Dutchess defendants assured investors that their due diligence would involve evaluating the business forecast, performance and stability of the target companies. They also asserted that they would refrain from any conduct that would create a conflict of interest between Dutchess Capital and Dutchess Advisors (and their individual members and directors) on the one hand and the funds and their investors on the other hand.[6]
The gist of the plaintiffs’ complaint is that the Dutchess defendants misrepresented their stated investment objectives and breached their fiduciary duties by making a series of questionable investments in two companies, Challenger Powerboats, Inc. and Siena Technologies, starting in 2003. The complaint alleges that the Dutchess defendants departed from their standards and procedures concerning conflicts of interest when, beginning in 2003, they caused Dutchess L.P. and Dutchess Ltd. to invest approximately $30 million in Challenger and Siena for the purpose of enriching themselves personally through fees, stock grants and other compensation. They did so despite auditors’ going concern qualifications for both companies year after year.[7] After the Dutchess defendants’ efforts to salvage those companies failed, Dutchess Capital by letter dated Februaiy 27, 2008, informed the plaintiffs that it would freeze their redemption rights in Dutchess L.P. and Dutchess Ltd. effective Februaiy 29, 2008. On April 16, 2008, the Dutchess defendants announced a $31 million write-down of three portfolios.[8], [9]
The plaintiffs filed a verified complaint in the Delaware Court of Chanceiy on April 13, 2010, asserting essentially the same claims against the defendants named in this action.[10] Some of the defendants asserted lack of personal jurisdiction. Following an October 21, 2010, hearing on motions for jurisdictional discoveiy, the plaintiffs voluntarily dismissed the action without prejudice on November 5,2010. They filed this action, setting forth twelve counts, on June 21, 2011.[11], [12] All defendants now move for dismissal.
DISCUSSION
To withstand a motion to dismiss, a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement. . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966, 550 U.S. 544, 557 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
Defendants raise a list of grounds for dismissal under the legal principles applicable to the various claims. For reasons that will become apparent, the Court will address only three of them: the Dutchess, Ltd. plaintiffs lack standing to bring their derivative claim under Cayman Islands law; the statute of limi *307 tations bars all the other claims; and the Court lacks personal jurisdiction over Dundee Leeds.[13]
1. Breach of Fiduciary Duty (Count I) with Respect to Dutchess Ltd.
The Dutchess Ltd. plaintiffs seek to bring their claim of breach of fiduciary duty derivatively on behalf of that entity. As the plaintiffs acknowledge, Cayman Islands law, which in effect means English law, governs the issue of whether those plaintiffs have derivative standing.[14] Subject to narrow exceptions, English law generally prohibits derivative actions brought by shareholders. See Winn v. Schafer, 499 F.Sup.2d 390, 396 (S.D.N.Y. 2007), citing Foss v. Harbottle, 2 Hare 461 (Eng. 1843). The only exception that could have any potential application to an action of this type is for situations that constitute “fraud on the minority.” See Winn, supra. To invoke that exception, a prospective derivative plaintiff must plead and prove both that the alleged wrongdoers have control over a majority of the voting stock, and that they benefitted from their misconduct at the company’s expense. Id.
Here, the complaint itself is silent as to stock ownership. The Placement Memorandum referenced in it refers to 4,990,000 non-voting shares and 1,000 voting shares “which are held by the Investment Manager.” Dutchess Capital is the Investment Manager. The complaint does not allege that Dutchess Capital benefitted from any wrongdoing. To the contrary, the complaint alleges that it was Leighton, Novielli and Smith who reaped the benefit. Because the Dutchess Ltd. plaintiffs have failed to plead that the same wrongdoer both controlled the company and benefit-ted from the misconduct, they lack standing to bring count I derivatively against Dutchess Ltd.
2. The Statute of Limitations
Counts I (as to Dutchess L.P.), II and III are governed by Delaware law.[15] Under 10 Del. Code Ann. §8106, the limitations period for both tort and contract claims is three years.[16] With respect to count I, alleging breach of fiduciary duly, it is well settled that the three-year statute of limitations applies to such claims. 10 Del. Code Ann. §8106; Dofflemeyer v. W.F. Hall Printing Co., 558 F.Sup. 372, 379 (D.Del. 1983) (applying Delaware law). See also In re Dean Witter Partnership Litig., 1998 WL 442456 at*4 (Del.Ch., July 18, 1998).
Absent fraudulent concealment, which is not alleged here, the limitation period begins to run at the time of the wrongful act. Isaacson, Stolper & Co. v. Artisans’ Sav. Bank, 330 A.2d 130, 132 (Del. 1974). The Dutchess L.P. plaintiffs claim that Dutchess Capital and the individual defendants breached their fiduciary duty by causing Dutchess L.P. to make investments in and loans to Challenger and Siena, and by collecting fees and stock grants from those transactions. On the facts alleged, that conduct occurred not later than February 2008, and the plaintiffs were fully on notice of it at least by April 25, 2008, when Challenger filed for bankruptcy.[17] Thus, the cause of action accrued not later than April 25, 2008. The plaintiffs filed this complaint more than three years later, on June 21, 2011.
The Dutchess L.P. plaintiffs’ breach of contract claim, count II, alleges that Dutchess Capital breached the Partnership Agreement on Februaiy 29, 2008, when it suspended their right to make withdrawals from the fund. Delaware follows the general rule that a cause of action for breach of contract accrues at the time of the breach. Nardo v. Guido DeAscanis & Sons, 254 A.2d 254, 255, 256 (Del.Super., 1969); Youell v. Maddox, 692 F.Sup. 343, 355 (D.Del., 1988). Thus, under lODel. CodeAnn. §8106, the plaintiffs had until March 1, 2011 to assert this claim. They brought this action some four months after that date.
Count III, breach of the covenant of good faith and fair dealing, similarly falls under the Delaware three-year statute of limitations. The Dutchess L.P. plaintiffs claim equitable tolling based on the individual defendants’ alleged self-dealing. Delaware law does permit equitable tolling in some circumstances, but only so long as a plaintiff reasonably relies on the competence and good faith of a fiduciary — that is, only until a plaintiff knew or had reason to know of the facts constituting the alleged wrong. Fike v. Ruger, 754 A.2d 254, 261 (Del.Ch., 1999). “The limitations period . . . is tolled only until the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury. Thus, the limitations period begins to run when the plaintiff is objectively aware of the facts giving rise to the wrong, i.e., on inquiry notice.” In re Dean Witter, 1998 WL 442456 at *6. “Inquiry notice does notrequire actual discovery of the reason for the injury. Nor does it require plaintiffs’ awareness of all of the aspects of the alleged wrongful conduct. Rather, the statute of limitations begins to run when plaintiffs should have discovered the general fraudulent scheme.” Id. at *7 Emphasis in original.
The plaintiffs cite to Yaw v. Talley, 1994 WL 89019 at *5 (Del.Ch., March 2, 1994), where the court commented that, “fiduciaries who benefit personally from their wrongdoing, especially as a result of fraudulent self-dealing, will not be afforded the protection of the statute of limitations.” As the Court in that same case observed, however, the limitations period begins to run when a plaintiff “knew or had reason to know the facts alleged to give rise to the wrong.” Id. at *7. “Plaintiffs were not entitled to sit idly by, blindly relying on defendants’ assurances, when the documents and disclosures plaintiffs received regularly were so suggestive of mismanagement.” In re Dean Witter, 1998 WL 442456 at *9.
Here, on the facts pled, the plaintiffs were on inquiry notice of the facts constituting the alleged breach at least by the time Dutchess Capital informed them *308 of the freeze on February 29, 2008, and they received actual notice of their claimed injury on April 16, 2008, when Dutchess Capital announced the write-down. Both dates were more than three years before the plaintiffs filed this action.
Counts V-VII, IX and X assert tort claims, as to which both Massachusetts and Delaware provide a three-year limitations period.[18] In Massachusetts, as in Delaware, a cause of action accrues when some harm has occurred, “even though the full extent and nature of that harm has not and cannot be established immediately.” Doherty v. Admiral’s Flagship Condominium Trust, 80 Mass.App.Ct. 104, 107 (2011). The discovery rule tolls the running of the limitations period, however, “in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another.” Id. at 107-08 (internal quotations and citations omitted). Thus an action accrues “when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.” Id. at 108.
As set forth supra, counts V through VII, all brought by the Dutchess L.P. plaintiffs directly, allege that Dutchess Capital and the individual defendants misrepresented that their investments in Dutchess L.P. and/or Dutchess Ltd. would be protected in various ways, and that defendants failed to disclose material information about their intentions. On the facts alleged, as recited supra, the plaintiffs were on notice of the claimed misrepresentations and omissions at the very latest by the time of the write-down on April 16, 2008, more than three years before they filed this action.
The claim for unjust enrichment, count IX, suffers from the same defect. Unjust enrichment is the “retention of money or property of another against the fundamental principles of justice or equity and good conscience.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). To state a claim for unjust enrichment, a plaintiff must allege facts indicating “unjust enrichment of one party and unjust detriment to another party.” Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).
For purposes of the statute of limitations, courts have treated claims of unjust enrichment as sounding either in tort or in contract, depending on the nature of the claim. E.g. Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., 448 F.Sup.2d 244, 263 (D.Mass., 2006) (applying tort statute of limitations to claims for unjust enrichment); see Goldstein v. Savings Bank Life Ins. Co. of Massachusetts, 435 Mass. 760, 761 n.2 (2002) (referring to “tort claims for unjust enrichment”); Williamson v. DT Management, Inc., 17 Mass. L. Rptr. 606 (Mass.Super. March 10, 2004) (treating unjust enrichment claim as quasi-contract); see generally Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (court looks to the “gist of the action or the essential nature of plaintiffs claim” to determine which limitations period applies).
Here, plaintiffs expressly disclaim any contract-based theory of unjust enrichment, recognizing that their express contract with Dutchess Capital would preclude recovery on such a theory. It follows that, if the claim is viable at all, it sounds in tort, and is subject to a three-year limitations period. For the same reasons discussed supra with respect to other claims, the plaintiffs were on notice of the conduct that forms' the basis for the unjust enrichment claim, and the alleged harm, at the latest, by April 25, 2008, when Challenger filed for bankruptcy. The cause of action therefore accrued by that date, and the three-year limitations period had expired at least two months before the plaintiffs filed this action.
The same conclusion follows, for the same reasons, with respect to the Dutchess L.P. plaintiffs’ derivative claim against Sullivan Bille for professional malpractice. The plaintiffs allege that Sullivan Bille negligently issued unqualified audit opinions of Dutchess L.P.’s financial condition on March 3, 2006, and April 17, 2007. For the same reasons discussed supra, plaintiffs knew the reality of the situation by April 16, 2008; their cause of action against Sullivan Bille therefore accrued not later than the date of the latest audit opinion, April 17, 2007.
Thus, counts I, II, III, V-VII, IX and X are all time-barred unless, as plaintiffs argue, the claims are saved by the Massachusetts Savings Statute, G.L.c. 260, §32.[19] That statute permits refiling, within one year, of an action that was timely brought but dismissed “for any matter of form.” The parties do not dispute that the Delaware action was timely brought. The record establishes that the plaintiffs dismissed it, voluntarily, on November 5, 2010, less than one year before they filed this action. The question, then, is whether the plaintiffs’ voluntary dismissal constitutes dismissal “for any matter of form,” within the meaning of the statute.
Plaintiffs contend that they dismissed the Delaware action because of certain defendants’ motions to dismiss for lack of jurisdiction, and the Delaware Court’s receptive response to those motions, as conveyed in comments of the Vice Chancellor at the hearing on their motion for jurisdictional discovery. Thus, the argument goes, the plaintiffs’ dismissal of their own action was motivated by a “matter of form,” within the scope of the savings statute.
“It is settled that a dismissal for want of jurisdiction is for a ‘matter of form’ within the meaning of the statute.” Boutiette v. Dickinson, 54 Mass.App.Ct 817, 818 (2002). See also Ciampa v. Beverly Airport Comm’n, 38 Mass.App.Ct. 974, 974 (1995); Rodi v. Southern New England Sch. of Law, 389 F.3d 5, 17-19 (1st Cir. 2004). But these cases involved dismissals by court order on grounds of jurisdiction, not voluntary *309 dismissal as occurred here. Plaintiffs have cited no case, and the Court has found none, treating a voluntary dismissal as a matter of form for purposes of the statute.[20]
Here, the only action taken by the Delaware Court in connection with the dismissal was its approval of an unopposed motion for voluntary dismissal, without any ground stated. Such an action by a court is essentially pro forma; it does not constitute a ruling on personal jurisdiction or any other “matter of form.’’[21] The plaintiffs’ argument would make application of the statute depend on determination of the plaintiffs’ subjective motive for their own voluntary action. That cannot be what the legislature intended. The Court concludes, therefore, that the savings statute does not apply, and counts I (as to the Dutchess L.P. plaintiffs), II, III, V-VII, IX and X are time-barred.
3. Professional Malpractice Against Dundee Leeds (Count XI).
Dundee Leeds seeks dismissal of the claim against it on the ground that the allegations of the complaint fail to establish personal jurisdiction.[22] The Court agrees. Determination of personal jurisdiction over a nonresident defendant requires a two-fold inquiry: (1) whether the plaintiffs assertion of jurisdiction is authorized by the Commonwealth’s longarm statute, and (2) whether the defendant has the requisite minimum contacts with the forum so that the exercise of personal jurisdiction is consistent with the due process requirements of the United States Constitution. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Only when both questions are answered affirmatively can the court properly exercise jurisdiction. The plaintiffs bear the burden of making a prima facie showing of sufficient facts, taken in the light most favorable to the plaintiffs, to support the exercise of personal jurisdiction. Cepeda v. Kass, 62 Mass.App.Ct. 732, 738-39 (2004). Thus, to survive a motion to dismiss for lack of jurisdiction, the plaintiffs must allege some facts to indicate a basis for jurisdiction that would satisfy both prongs.
The plaintiffs here have failed to meet that requirement. The only conduct alleged as to Dundee Leeds that might involve any contact with Massachusetts is that, acting as the administrator of the funds, it made and circulated net asset value calculations. The complaint alleges that two of the plaintiffs have a place of business in Massachusetts, but it does not allege that Dundee Leeds sent its calculations to those plaintiffs here, or otherwise communicated with them here. Nor does it allege that Dundee Leeds solicited any business in Massachusetts. The Court is not persuaded that these facts constitute “transacting business” in the Commonwealth, even under the broad sweep of c. 223A, §3(a). See, e.g., Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Heins v. Wilhelm Loh Wetzlar Optical Mach., 26 Mass.App.Ct. 14, 17 (1988). Nor is there anything to indicate that Dundee Leeds committed any tort in Massachusetts. The Court therefore has no occasion to consider the constitutional question of minimum contacts. Count XI thus must fail.
CONCLUSION AND ORDER
For the reasons stated, Defendants Dutchess Capital Management, LLC, Dutchess Advisors, LLC, Michael Novielli, Douglas Leighton, Theodore Smith and Dundee Leeds Management Services’ Motion to Dismiss Counts I-IX and XI is ALLOWED. Defendant Sullivan Bille P.C.’s Motion to Dismiss Count X is also ALLOWED.

between March and July 2007, Cannonball invested $5,000,000 in Dutchess Ltd. Between February 1, 2007 and August 1, 2007, Cannonball Plus invested $2,500,000 in Dutchess Ltd. On April 1, 2007, East Orient invested $300,000 in Dutchess Ltd.

Between April 2004, and November 2006, Wenzel, an Ohio resident, invested $480,000 in and became a limited partner of Dutchess L.P. The Schwab Trust invested in and became a limited partner of Dutchess L.P. on March 1, 2006. In 2006 and 2007, Carrswold invested $3,800,000 in, and became a limited partner of Dutchess L.P.

Nhis type of hedge fund is known as a “feeder fund.”

Delaware L.P. was formed in 2000; it acquired another limited partnership, Dutchess II, L.P., in 2007.

Dutchess L.P., Dutchess Ltd., the master fund, Dutchess Capital and Dutchess Advisors all have their principal place ofbusiness at 50 Commonwealth Avenue, Boston, MA 02116.

According to the complaint, the Dutchess defendants made these written representations in a 2000 Dutchess L.P. Offering Memo and a 2007 Dutchess Ltd. Placement Memo, which were similar in all material respects. The plaintiffs assert that they relied on these, as well as on a 2003 PowerPoint presentation distributed to potential investors, due diligence questionnaires dated 2004 and 2006, a November 2006 “Hedge Connection” marketing e-mail, and multiple unqualified audits of Dutchess L.P. They also point to oral representations in a series of meetings with Leighton in 2006 and 2007, and in conversations between Leighton and Wenzel on February 28, 2008.

With respect to Challenger, the plaintiffs contend that, as a condition of the investment, the Dutchess defendants required Challenger to hire first Novielli and Leighton, and subsequently Smith, as consultants, in exchange for substantial shares of Challenger stock. Novielli, Leighton and Smith joined Challenger’s board of directors in June 2006, eventually becoming the board’s only members. According to the complaint, each year the auditors issued a “going concern” qualification, expressing the view that the company might not be able to survive the year. Regardless of Challenger’s financial difficulties, and what the plaintiffs argue was a series of bad acquisitions on Challenger’s part, the Dutchess defendants continued to prop Challenger up with multiple cash infusions and loans totaling nearly $20 million of the funds’ assets, $9 million of which was contributed between January 2007 and January 2008. The plaintiffs assert that Novielli, Leighton and Smith received substantial stock and cash from their involvement with Challenger, while the funds recovered only about $900,000. The facts alleged with respect to Siena are very much the same. According to the plaintiffs, Novielli and Leighton served on Siena’s board of directors, and the funds entered into a series of loans for transactions that proved disastrous. Although Siena posted net losses of $4.2 million in 2004 and $15.5 million in 2005, the Dutchess defendants entered into two loan restructuring agreements whereby Dutchess L.P. forgave $7.6 million of debt in return for an unsecured promissory note in a lesser *310 amount, allowed Siena to borrow without the funds’ consent, and waived certain of the funds’ claims regarding Siena’s loans. The complaint alleges that Novielli and Leighton reaped large consulting fees and other compensation.

The master fund wrote down $19,600,000 of its remaining investment in Challenger, $7,500,000 of its investment in Execute Sports, and approximately $4,000,000 of its investment in DNA Print Genomics. The plaintiffs make no claims with respect to any investments in Execute Sports and DNA Print Genomics.

The Dutchess defendants last invested in Siena in July 2007. Challenger filed for bankruptcy on April 25, 2008.

The Delaware complaint also listed as a defendant Marcum & Kliegman, LLP, a New York company that audited both the statement of assets and liabilities of Dutchess Ltd. and the statement of financial condition of Dutchess L.P. for the year ending December 31, 2007, and provided audit opinions dated June 21, 2008. The plaintiffs are pursuing an action against Marcum in New York.

The complaint, consisting of 316 paragraphs spanning 82 pages is anything but short and plain, risking dismissal on that basis alone. See, e.g., Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). See also Driscoll v. Board of Trustees of Milton Academy, 70 Mass.App.Ct. 285, 299 (2007).

Count I of the complaint, for breach of fiduciary duty, is brought derivatively by the Dutchess L.P. plaintiffs on behalf of Dutchess L.P., and by the Dutchess Ltd. plaintiffs on behalf of Dutchess Ltd. against Dutchess Capital, Novielli, Leighton and Smith. Count II for breach of contract is brought directly by the Dutchess L.P. plaintiffs against Dutchess Capital for breach of the Dutchess Limited Partnership Agreement. Count III, for breach of the covenant of good faith and fair dealing, is brought derivatively by the Dutchess L.P. plaintiffs on behalf of Dutchess L.P. against Dutchess Capital. Counts V and VI, for fraud, are brought by the plaintiffs in their individual capacity against Dutchess Capital, Novielli, Leigh-ton and Smith. Counts VII and VII [sic], for negligent misrepresentation, are brought by the plaintiffs in their individual capacity against Dutchess Capital, Novielli, Leighton and Smith. Count IX, for unjust enrichment, is brought derivatively by the Dutchess L.P. plaintiffs on behalf of Dutchess L.P. and by the Dutchess Ltd. plaintiffs on behalf of Dutchess Ltd. against Dutchess Capital, Dutchess Advisors, Novielli, Leighton and Smith. Count X, for professional malpractice/negligence, is brought by the Dutchess L.P. plaintiffs on behalf of Dutchess L.P. against Sullivan Bille. Count XI, for professional malpractice/negligence, is brought derivatively by the Dutchess L.P. plaintiffs on behalf of Dutchess L.P. and by the Dutchess Ltd. plaintiffs on behalf of Dutchess Ltd. against Dundee Leeds. The complaint has no count IV and two counts VII.

In addition to these grounds for dismissal, the Dutchess defendants contend that the claims of fraud and negligent misrepresentation (counts V-VII) are not pled with particularity as required by Mass.R.Civ.P. 9(b); and that the investment risk disclaimers in the Offering and Placement Memos negate reasonable reliance; and that the Dutchess L.P. and Dutchess Ltd. plaintiffs have no recourse to a claim of unjust enrichment (count IX) because they have a contractual relationship with the Dutchess defendants. As to the claim against Sullivan Bille (count X), Sullivan Bille argues that the plaintiffs stand in the shoes of Dutchess L.P., which could not have relied on an allegedly negligent audit since its controlling insiders were aware of the matters that an accurate audit would have revealed. Sullivan Bille further argues that it had no duty to ensure that Dutchess L.P.’s investment strategy would conform to the offering memorandum.

In Massachusetts, “the State of incorporation dictates the choice of law regarding the internal affairs of a corporation.” Harrison v. NetCentric Corp., 433 Mass. 465, 471 (2001), and cases cited.

Section 9.07 of the Dutchess L.P.’s Partnership Agreement includes a Delaware choice of law clause. Such contractual choice of law provisions are enforceable where, as here, “the state of the chosen law has some substantial relationship to the parties or the contract.” Restatement (Second) of Conflict of Laws, §187; see also Restatement (Second) of Conflict of Laws, §11, comment 1 (1971); see generally New England Tel Co. v. Gourdeau Constr. Co., 419 Mass. 658, 661 (1995).

 10 Del. Code Ann. §8106 reads, in relevant part: “No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action.”

The last investment in Siena occurred in 2007. The individual defendants last collected compensation in February 2008.

See G.L.C. 260, §2A.

G.L.c. 260, §32 reads in relevant part as follows: “If an action duly commenced within the time limited in this chapter is dismissed ... for any matter of form . . . the plaintiff . . . may commence a new action for the same cause within one year after the dismissal... of the original action."

To the contrary, the cases the parties have identified under similar statutes in other jurisdictions have held that voluntary dismissal does not constitute dismissal for a matter of form. See, e.g., Parrott v. Meacham, 290 A.2d 335, 335 (Conn. 1971) (when plaintiff withdraws the original action, that withdrawal “cannot by the most liberal construction constitute accidental failure of suit for matter of form” as provided by the saving statute); Baker v. Baningoso, 58 A.2d 5, 8 (Conn. 1948) (observing that if a plaintiff can begin over again by voluntary withdrawal, he can keep his case alive indefinitely); Marshall v. Kansas City S. Rys. Co., 7 So.3d 210, 214 (Miss. 2009) (voluntary dismissal without prejudice generally not considered a “matter of form” under Mississippi savings statute); Graleski v. ILC Dover, 26 A.3d 213, 2011 WL 3074710 at *5 (Del.Super., July 26, 2011) (unpublished disposition) (voluntary withdrawal of a complaint does not constitute dismissal or stay based on a matter of form).

The Court notes that, according to the facts alleged in the complaint in this action, Dutchess L.R, Dutchess Capital, Leighton, Novielli and Smith were clearly subject to personal jurisdiction in Delaware. Dutchess L.R is a Delaware limited partnership; Dutchess Capital is its general partner; and the individual defendants controlled Dutchess L.R See, e.g., Werner v. Miller Technology Management, L.P., 831 A.2d 318, 328 (Del.Ch., 2003), citing RJ Associates, Inc. v. Health Payors' Organization Ltd. Partnership, 1999 WL 550350 at *5 (Del.Ch., July 16, 1999). Only defendants Dutchess Ltd., Dutchess Advisors, Dundee Leeds and Sullivan Bille claimed lack of personal jurisdiction in the Delaware action.

Although the statute of limitations analysis set forth supra would appear to apply to this claim, as to the other tort claims, Dundee Leeds argues only lack of personal jurisdiction.