This case arises from a series of agreements between Columbia Plaza Associates (CPA) and Northeastern University (university) related to the development of land near the university's campus.
In 2013, CPA filed a verified complaint in Superior Court alleging seven causes of action. In 2014, a judge of the Superior Court (first judge) allowed the university's Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), motion to dismiss CPA's claims alleging breach of contract and breach of the implied covenant of good faith and fair dealing, and a claim to enforce the contract in equity. In 2015, a different Superior Court judge (summary judgment judge) ordered the entry of summary judgment pursuant to Mass.R.Civ.P. 56(d), 365 Mass. 824 (1974), on three more of CPA's claims, but allowed CPA's claim for a violation of G. L. c. 93A to go to trial.[2] In 2016, the university again moved for summary judgment on the remaining claim for a violation of c. 93A, and CPA filed a cross motion for leave to amend its complaint to conform to the evidence adduced during discovery. A third Superior Court judge (third judge) denied both motions. In October of 2016, a bench trial commenced on CPA's claim for a violation of c. 93A. On the fourth day of trial, CPA moved to amend its complaint pursuant to Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974), which was summarily denied. Following the conclusion of trial, judgment entered in favor of the university.
CPA now appeals, arguing that (1) the first judge erred by allowing in part the university's motion to dismiss, (2) the third judge and the trial judge abused their discretion by denying CPA's motions for leave to amend its complaint, and (3) the judgment on CPA's claim for a violation of c. 93A claim was clearly erroneous.[3] We affirm.
Motion to dismiss. We review a ruling on a motion to dismiss de novo, "accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Edwards v. Commonwealth, 477 Mass. 254, 260 (2017). To survive a motion to dismiss, the plaintiff must present factual allegations that rise above the level of speculation and plausibly suggest an entitlement to relief. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). See also Flagg v. AliMed, Inc., 466 Mass. 23, 26 (2013).
We limit our de novo review to CPA's complaint and we will not consider facts adduced beyond its four corners. See General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992). CPA's dismissed claims relate to a joint venture agreement between CPA and the university for land adjacent to the university's campus. In 1998, the university approached CPA with a proposal to create a joint venture to purchase development rights from CPA. The university requested that CPA obtain title to a parcel from the Boston Redevelopment Authority[4] (BRA) and then sell all interest in that parcel to the university so that the university could build a parking garage. In 1999, the parties reduced this agreement to writing.
Included within the agreement is a provision detailing a separate future joint venture for another parcel of land titled parcel 18-3A.[5] The complaint alleges, and we accept as true, that the parcel 18-3A provision was an integral part of the over-all agreement for the garage parcel. Following closing, the university paid CPA a price below fair market value for the garage parcel, but never entered into the contemplated second joint venture agreement for parcel 18-3A. In 2007, the university independently submitted an amended development plan to the BRA in which it represented the existence of a partnership with CPA.[6] Within these plans, the university included a proposal to build a dormitory on parcel 18-3A. Following BRA approval, the university built the proposed dormitory on parcel 18-3A, which was ultimately completed in 2009. The university never paid CPA rent, a capital contribution, or a purchase price for parcel 18-3A.
To survive a motion to dismiss on a breach of contract claim, the plaintiff must establish (1) an oral or written agreement, express or implied, (2) supported by valid consideration; (3) the plaintiff was ready, willing, and able to perform; (4) breach by the defendant; and (5) damage to the plaintiff. See Singarella v. Boston, 342 Mass. 385, 387 (1961). CPA argues that the unambiguous language contained in the agreement created a contract that the university breached when it failed to compensate CPA for developing parcel 18-3A. See Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).
The portions of CPA's complaint that assert interpretations of the parcel 18-3A provision are legal, rather than factual, and we do not accept CPA's interpretation as true when reviewing the motion to dismiss. USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116 (1989). Rather, we interpret the agreement de novo to determine if CPA's complaint alleged claims upon which relief could be granted. See Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 408 (1995) (contract claim properly dismissed pursuant to rule 12 [b][6] where, accepting plaintiff's allegations as true, defendant acted within contractual rights in terminating her).
Generally, "[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935). However, "[i]t is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract." Situation Mgmt. Sys. v. Malouf, Inc., 430 Mass. 875, 878 (2000). In such a case, if the parties "specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding." Lafayette Place Assocs. v. Boston Redev. Authy., 427 Mass. 509, 518 (1998). See Hastings Assocs. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 169-170 (1997).
When conducting a de novo review of the unambiguous language in the parcel 18-3A provision, we fail to find the necessary formulae and procedures to fill the omitted material terms that CPA argues bind the university to an enforceable contract. Here, the express language of the provision only obligates the parties to "commence negotiations" toward reaching an agreement for parcel 18-3A upon closing of the garage parcel. The provision, unlike in Lafayette Place Assocs. or Hastings Assocs., does not give a party an automatic right to enter into a joint venture agreement, provide a mechanism for resolving omitted terms, or even state what basic form the considered joint venture will take. In fact, the provision itself contemplates that agreement on material terms may never be reached by limiting negotiations to a six-month window unless mutually extended.
CPA argues that despite its plain language, affirmative obligations must be read into the parcel 18-3A provision because of the importance the parties placed on it during negotiations for the entire agreement. We agree that "[t]he judicial bias is toward interpreting a contract 'so as to make it a valid and enforceable undertaking rather than one of no force and effect.' " Finn v. McNeil, 23 Mass. App. Ct. 367, 372 (1987), quoting from Shayeb v. Holland, 321 Mass. 429, 432 (1947). However, "[t]he court cannot make for the parties a contract which they did not make for themselves." Read v. McKeague, 252 Mass. 162, 164 (1925). Accordingly, given the plain language, the parcel 18-3A provision is merely an unenforceable agreement to reach an agreement and the judge properly dismissed the breach of contract claim on the ground that it failed to state a claim upon which relief can be granted.[7] See Schaer v. Brandeis Univ., 432 Mass. 474, 477-478 (2000). Because there must first be a binding contract to bring a claim for breach of the implied covenant of good faith and fair dealing, it also was proper to dismiss that claim. See Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 288 (2007).
CPA also argues that even if its contractual claims fail, it should be able to enforce in equity the agreement to reach an agreement. Whether CPA's equity claim sounds in quasi-contract or estoppel, the judge properly dismissed it for failure to state a claim upon which relief can be granted. Here, there is an actual written instrument stating the obligations, or lack thereof, of the parties. See Popponesset Beach Assn. v. Marchillo, 39 Mass. App. Ct. 586, 592 (1996) ("[I]mplied-in-fact contract comes into being when, notwithstanding the absence of a written agreement ... expressing mutual obligations, the conduct or relations of the parties imply the existence of a contract"). Alternatively, CPA sought to estop the university from asserting that it did not enter into an enforceable joint venture agreement for parcel 18-3A. However, promissory estoppel requires that the party invoking it must have reasonably relied on the alleged promise to the party's detriment. Rhode Island Hosp. Trust Natl. Bank v. Varadian, 419 Mass. 841, 849-850 (1995). Here, where the terms of the alleged promise are unambiguously indefinite, CPA had nothing more than a well-founded hope that a future joint venture agreement would come to fruition. Thus, where the university did not make a sufficiently definite promise, any reliance on the part of CPA was too unreasonable to give rise to a valid estoppel claim. Ibid.
Motions for leave to amend the complaint. CPA contends that both the third judge and the trial judge abused their discretion by denying its motions for leave to amend its complaint. See Doherty v. Admiral's Flagship Condominium Trust, 80 Mass. App. Ct. 104, 112 (2011), citing Spillane v. Adams, 76 Mass. App. Ct. 378, 390 (2010).
First, CPA contends that the third judge impermissibly deferred to the partial judgment entered on CPA's three dismissed claims. See Goulet v. Whitin Mach. Works, Inc., 399 Mass. 547, 552-553 (1987). While we agree that a judge is not permitted to merely defer to a prior judgment dismissing a complaint when ruling on a motion to amend, we find no abuse of discretion when a plaintiff's amendment would be futile. See Doherty, supra. Here, CPA argues that the survival clause in the agreement was ignored by both the first and third judges and its consideration would have allowed CPA to state a valid claim for breach of contract. As observed in note 5 supra, such a survival clause, though inconsistent with the six-month expiration clause, does not create an enforceable contract. Accordingly, any motion to amend the complaint to highlight such a clause would be futile. See ibid. We find no abuse of discretion in the third judge's order.
CPA also argues that the trial judge abused her discretion when she denied CPA's motion for leave to amend its complaint to conform to the evidence during trial pursuant to Mass.R.Civ.P. 15(b). "[I]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." Hamed v. Fadili, 408 Mass. 100, 105 (1990), quoting from Goulet, 399 Mass. at 550 n.3. "[T]he timing of such a motion is a factor that may be considered by the judge in ruling on the motion." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 398 (2003). Here, we find no abuse of discretion when CPA moved to amend two years after the breach of contract claim was dismissed, nine months after summary judgment narrowed the issue solely to the claim for a violation of c. 93A, and four days into trial. From filing its complaint in 2013 until the start of trial, CPA had nearly four years to amend its complaint, which included the summary judgment judge's clear invitation to do so in his memorandum of decision and order. Finally, nothing at trial suggests that the university expressly or implicitly consented to trial of a breach of contract claim and adding such a claim would have severely prejudiced the university. See Herbert A. Sullivan, Inc., supra at 399. Accordingly, we find no abuse of discretion.[8]
Violation of c. 93A. We review whether the trial judge's finding that CPA's claim of a violation of c. 93A exceeded the four-year statute of limitations was clearly erroneous.[9] See G. L. c. 260, § 5A. A "finding is clearly erroneous only when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997) (quotations omitted). "In tort actions and actions for violation of G. L. c. 93A, the cause of action accrues at the time the plaintiff is injured." Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 232 (2000).
CPA did not commence this action until July 1, 2013, more than four years after CPA sent the university a demand letter on April 13, 2009, detailing the alleged violation of c. 93A related to parcel 18-3A. In its demand letter, CPA specifically identified the conduct it alleged violated c. 93A, confirming CPA's notice of its claim against the university. See Riley v. Presnell, 409 Mass. 239, 246 (1991) ("Accrual of the cause of action occurs when the ordinary reasonable person who had been subjected to the experience would have discovered that the injury was caused by that experience"). The demand letter shows that CPA was aware of the university's conduct enough to request damages for its alleged injuries and to start the clock for the statute of limitations. Cf. Baldassari v. Public Fin. Trust, 369 Mass. 33, 44 (1975). We find no error in the trial judge's finding that CPA's claim for a violation of c. 93A was time-barred.
Judgment affirmed.
Posttrial order granting costs affirmed.

CPA does not appeal from the partial grant of summary judgment.

CPA also noticed an appeal from the posttrial order awarding costs to the university, but presented no argument to us on this issue. Accordingly, it is waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Now known as the Boston Planning and Development Agency.

The provision reads, in pertinent part, as follows:
"No later than six (6) months after the Closing (the "Joint Venture Date"), Buyer (or an entity wholly owned and controlled by it) and Seller (or an entity wholly owned and controlled by it) shall enter into a joint venture (the "Joint Venture") to develop a new building on Parcel 18-3A of Ruggles Center (the "Development Parcel") pursuant to a joint venture agreement or liability company agreement in form and substance mutually satisfactory to the parties (the "Joint Venture Agreement"). The parties shall commence negotiations regarding the Joint Venture after the execution hereof and shall work diligently and in good faith to execute the Joint Venture Agreement by the Joint Venture Date, which may be extended by either party for a period of sixty (60) days or longer with the mutual agreement of the parties. The provisions of this section 6.3 shall survive the Closing until full execution of the Joint Venture Agreement at which time they shall be null and void and of no further force and effect."

CPA alleges that the university's representation of a partnership was fraudulent to both CPA and the BRA. Aside from its claim under c. 93A, CPA did not bring a claim sounding in fraud or tortious interference, and the BRA was not a party below. For the reasons stated in note 2 of the memorandum of decision on the university's motion to dismiss, we agree that this alleged fact does not allow CPA's claims to survive dismissal.

CPA argues that the survival clause of the provision requires a reading that the mutual obligation between CPA and the university to "commence negotiations" must apply indefinitely. Such a reading ignores the two clauses that come immediately before and after the survival language which expressly contemplate never reaching an agreement. See Metropolitan Property & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 58 Mass. App. Ct. 818, 822-823 (2003).

A judge's decision to summarily deny a motion to amend is not a per se abuse of discretion or error of law. See Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 291-292 (1977).

We need not address CPA's argument that the trial judge committed an error by ruling on the statute of limitations issue. Evidence at summary judgment and on a motion to dismiss must be read favorably to the nonmoving party. This is not the presumption at trial, and a different judgment need not be reviewed under an abuse of discretion standard.